UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-cr-00187-JAW-1 |
| | ) | No. 2:21-cr-00146-JAW-1 |
| | ) | |
| RAYEVON DESCHAMBAULT | ) | |

## ORDER ON PENDING MOTIONS

A defendant facing two federal prosecutions moves to suppress evidence and to dismiss the new charge and new case brought against him for delay and vindictive prosecution. In 2019, after law enforcement, in performing a cellphone search pursuant to a state search warrant for evidence of illegal drug dealing, discovered illicit video evidence on the defendant's cellphone, the defendant was charged with two counts of sexual exploitation of a child. He was also indicted on state drug charges, which were dismissed soon after the onset of the federal prosecution on the child exploitation counts. Almost two years later, following extensive pretrial litigation and an evidentiary hearing, a federal grand jury charged the defendant with two drug offenses in a separate case, and returned a superseding indictment adding a new charge of possession of child pornography in the first case.

Both indictments stemmed from the same initial drug investigation, in furtherance of which law enforcement sought and executed a state warrant to search the defendant's cellphone. The Court, in an effort to afford the defendant his full due process rights, held a supplemental evidentiary hearing to allow him to present the testimony of a forensic cellphone examiner, regarding how information is stored on

modern cellphones and whether the cellphone warrant could have, or should have, limited law enforcement review of the defendant's cellphone.

The Court rejects the defendant's claim of vindictive prosecution and his assertion that law enforcement unconstitutionally failed to limit the scope of the warranted cellphone search.

## I.   BACKGROUND

On October 11, 2019, a federal grand jury indicted Rayevon Deschambault with two counts of sexual exploitation of a child, for alleged violation of 18 U.S.C. § 2251(a). No. 2:19-cr-00187-JAW, *Indictment* (ECF No. 1). On February 21, 2020, Mr. Deschambault filed three motions to suppress; the last included a request for a *Franks*[1] hearing. *Mot. to Suppress* (ECF No. 40); *Mot. to Suppress II* (ECF No. 41); *Mot. to Suppress and Req. for Franks Hr'g* (ECF No. 42). The Government filed a consolidated response to these motions on April 27, 2020. *Gov't's Resp. to Def.'s Mots. to Suppress and Req. for a Franks Hr'g* (ECF No. 49). Mr. Deschambault filed replies on May 11, 2020. *Reply Re: Mot. to Suppress* (ECF No. 51); *Reply Re: Mot. to Suppress and Req. for Franks Hr'g* (ECF No. 52).

On July 20, 2020, the Court ordered the parties to address by supplemental memoranda the applicability of the plain view doctrine to Mr. Deschambault's motions to suppress. *Order for Further Briefing* (ECF No. 55). The Government and Mr. Deschambault filed supplemental briefing on August 3, 2020, *Gov't's Br. on the Applicability of the Plain View Doctrine* (ECF No. 56); *Supp. Mem. Re: Mots. to*

---

[1]     *Franks v. Delaware*, 438 U.S. 154 (1978).

*Suppress* (ECF No. 57), and responses on August 10, 2020. *Gov't Mem. in Resp. to Def.'s Br.* (ECF No. 58); *Resp. Re: Plan View/Mots. to Suppress* (ECF No. 59).

On September 21, 2020, the Court denied Mr. Deschambault's three motions to suppress without holding an evidentiary or *Franks* hearing. *Order on Mot. for Franks Hr'g and Mots. to Suppress* (ECF No. 60) (*First Order on Mots. to Suppress*). On September 29, 2020, Mr. Deschambault moved for reconsideration of the Court's order denying his motions to suppress. *Resp. to Ct. Order on Def.'s Mots. to Suppress* (ECF No. 62). Mr. Deschambault requested that the Court review the cellphone videotapes that are the subject of his motion to suppress. *Id.* at 1. He further requested a hearing so that he may develop the record regarding the issuance and execution of the state and federal warrants. *Id.* The Court agreed to view the three videos and, after doing so, issued an order on January 5, 2021 deferring final ruling on Mr. Deschambault's motion for reconsideration. *Order on Mot. for Recons.* (ECF No. 75); *see also Interim Order on Mot. for Recons.* (ECF No. 70).

On February 9, 2021, Rayevon Deschambault moved for an evidentiary hearing on his motions to suppress and a *Franks* hearing. *Mot. for Hr'g* (ECF No. 80). On March 15, 2021, the Court granted Mr. Deschambault's motion for a hearing on the motions to suppress to "explore the delay between August 20, 2019 and the federal search warrant of September 24, 2019, the application of the 'plain view' doctrine to these facts, the asserted lack of a search or investigation following the issuance of the federal warrant, and other issues." *Order on Mot. for Suppression and Franks Hr'g and Oral Arg.* at 2 (ECF No. 85).

In doing so, the Court reminded the parties that "application of the plain view doctrine to [Mr. Deschambault's] motions to suppress is an alternative and secondary issue." *Id.* at 3. The Court emphasized that it denied Mr. Deschambault's previous motions primarily upon its conclusion that "law enforcement came upon these videos while performing a warranted search of Mr. Deschambault's cellphone and the sexual nature of two of the videos did not prevent them from using the videos to further investigate facts relevant to the drug investigation." *Id.* The Court denied Mr. Deschambault's request for a *Franks* hearing. *Id.*

On July 9, 2021, the Court held an evidentiary hearing on Mr. Deschambault's motions to suppress, at which Maine Drug Enforcement Agent, Austin Clark, and Federal Bureau of Investigation (FBI) Task Force Officer, Daniel Townsend, testified. *Min. Entry* (ECF No. 95); *see Tr. of Proceedings* (ECF No. 98) (*2021 Hr'g Tr.*).

On September 22, 2021, a grand jury returned a superseding indictment charging Mr. Deschambault with a new count of possession of material containing child pornography in violation of 18 U.S.C. §§ 225A(a)(5)(B), (b)(2) and 18 U.S.C. §2256(8)(A). *Superseding Indictment* (ECF No. 103). Also on September 22, 2021, the grand jury returned an indictment in a new drug case, charging Mr. Deschambault with one count of distribution of cocaine base and one count of conspiracy to distribute and possession with intent to distribute cocaine base, in violation of 18 U.S.C. §§ 841(a)(1) and 846. No. 2:21-cr-00146-JAW, *Indictment* (ECF No. 1). On October 21, 2021 the Court denied Mr. Deschambault's motion for

reconsideration of his motions to suppress.  No. 2:19-cr-00187-JAW, *Order on Mot. for Recons. on Mots. to Suppress* (ECF No. 109) (*Order on Mot. for Recons.*).

On December 3, 2021, Mr. Deschambault filed a motion to dismiss the possession of child pornography charge added in the superseding indictment for alleged vindictive prosecution and violation of Federal Rule of Criminal Procedure 48(b), No. 2:19-cr-00187-JAW, *Mot. to Dismiss* (ECF No. 118) (*Def.'s Video Case Mot. to Dismiss)*, and a motion to suppress the three videos seized from his iPhone as to the new child pornography possession charge for an alleged violation of the Fourth Amendment.  No. 2:19-cr-00187-JAW, *Mot. to Suppress Evid. Seized in Violation of the Fourth Amendment* (ECF No. 117) (*Def.'s Video Case Mot. to Suppress*).  He also filed related motions to dismiss the September 21, 2021, drug indictment, No. 2:21-cr-00146-JAW, *Mot. to Dismiss* (ECF No. 16) (*Def.'s Drug Case Mot. to Dismiss*), and to suppress the three iPhone videos in the independent prosecution in his new drug case.  No. 2:21-cr-00146-JAW, *Mot. to Suppress Evid. Seized in Violation of the Fourth Amendment* (ECF No. 15) (*Def.'s Drug Case Mot. to Suppress*).

On January 6, 2022, the Government responded in opposition to both Mr. Deschambault's motions in his video case, and to Mr. Deschambault's motion to dismiss in his drug case.  No. 2:21-cr-00146-JAW, *Gov't's Opp'n to Def.'s Mot. to Dismiss for Vindictive Prosecution* (ECF No. 20) (*Gov't's Opp'n to Drug Case Mot. to Dismiss*); No. 2:19-cr-0187-JAW, *Gov't's Opp'n to Def.'s Mot. to Dismiss for Vindictive Prosecution* (ECF No. 122) (*Gov't's Opp'n to Video Case Mot. to Dismiss*); No. 2:19-cr-0187-JAW, *Gov't's Resp. to Def.'s Mot. to Suppress* (ECF No. 123) (*Gov't's Opp'n to*

*Video Case Mot. to Suppress*).  On January 10, 2022, the Government responded in opposition to Mr. Deschambault's motion to suppress in the new drug case.  No. 2:21-cr-00146-JAW, *Gov't's Resp. to Def.'s Mot. to Suppress* (ECF No. 23) (*Gov't's Opp'n to Drug Case Mot. to Suppress*).

On February 2, 2022, Mr. Deschambault filed his replies in both cases.  No. 2:21-cr-00146-JAW, *Deschambault's Reply to Gov't's Obj. to Mot. to Suppress* (ECF No. 26); No. 2:21-cr-00146-JAW, *Deschambault's Reply to Gov't's Obj. to Mot. to Dismiss Based on Vindictive Prosecution* (ECF No. 27); No. 2:19-cr-0187-JAW, *Deschambault's Reply to Gov't's Obj. to Mot. to Suppress Filed Under Newly Added Count III of the Superseding Indictment* (ECF No. 126); No. 2:19-cr-0187-JAW, *Deschambault's Reply to Gov't's Obj. to Mot. to Dismiss Based on Vindictive Prosecution* (ECF No. 127).

On February 18, 2022, the Government filed additional attachments relating to Mr. Deschambault's state drug charges, which were dismissed on October 17, 2019.  No. 2:21-cr-00146-JAW, *Maine v. Deschambault, State Ct. Compl.* (ECF No. 30).  On March 11, 2022, Mr. Deschambault filed stipulated facts regarding communications between the Government and defense counsel.  No. 2:19-cr-00187-JAW, *Stipulated Facts* (ECF No. 130); No. 2:21-cr-0146-JAW, *Stipulation* (ECF No. 31).  That same day he filed motions for oral argument on his motions to dismiss.  *Notice*, No. 2:19-cr-00187 (ECF No. 131); No. 2:21-cr-00146-JAW (ECF No. 32).  On March 25, 2022, the Government filed responses in both cases, deferring to the Court's assessment of the need for oral argument.  *Gov't's Resp. to Def.'s Mot. for Oral Arg.*, No. 2:19-cr-00187-

JAW (ECF No 132); No. 2:21-cr-00146-JAW (ECF No. 33). On March 25, 2022, the Court granted Mr. Deschambault's request for oral argument. *Order*, No. 2:19-cr-00187 (ECF No. 133); No. 2:21-cr-00146-JAW (ECF No. 34).

On March 31, 2022, Mr. Deschambault filed motions requesting an in-court hearing to present expert testimony regarding how data is stored on modern cellphones, and how a law enforcement search of a phone can be tailored or limited. *Deschambault's Suppl. Mem. and Aff. of S. Verronneau in Supp. of Suppression Mot.; and Req. for Suppl. Hr'g*, No. 2:19-cr-0187-JAW (ECF No. 134); No. 2:21-cr-0146-JAW (ECF No. 35) (*Def.'s Pre-Hr'g Mem.*).

On April 21, 2022, the Government responded in opposition in both cases. No. 2:19-cr-00187-JAW, *Gov't's Resp. to Def.'s Mot. for Suppl. Hr'g* (ECF No. 135) (*Gov't's Opp'n to Hr'g*); No. 2:21-cr-00146-JAW, *Gov't's Resp. to Def.'s Mot. for Evidentiary Hr'g* (ECF No. 36) (*Govt's' Pre-Hr'g Mem.*). Mr. Deschambault filed his replies on May 5, 2022. *Reply to Opp'n to Def. Mot. for Suppl. Hr'g*, No. 2:19-cr-00187-JAW (ECF No. 136); No. 2:21-cr-00146-JAW (ECF No. 37). On May 13, 2022, the Court granted Mr. Deschambault's request for an additional evidentiary hearing. *Order*, No. 2:19-cr-00187-JAW (ECF No. 137); No. 2:21-cr-00146-JAW (ECF No. 38).

On July 7, 2022, the Court held oral argument on Mr. Deschambault's motions to dismiss and heard testimony from his data forensics expert, Steven Verronneau, and from the Government's data forensics expert, Steven Rappold, related to the state search warrant and motions to suppress. *Min. Entry*, No. 2:19-cr-00187-JAW (ECF No. 139); No. 2:21-cr-00146-JAW (ECF No. 41).

## II.    STIPULATED FACTS

On March 11, 2022, Mr. Deschambault and the Government filed a joint stipulation in which the parties agreed to several factual stipulations.  No. 2:19-cr-00187-JAW, *Stipulated Facts* ¶¶ 1-3; No. 2:21-cr-0146-JAW, *Stipulation* ¶¶ 1-3. Sometime near the evidentiary hearing on July 9, 2021, the Government asked defense counsel whether Mr. Deschambault was interested in resolving the initial indictment against him.  *Id.* ¶ 1.  The prosecutor raised the possibility of a guilty plea to possession of child pornography in the video case and to a drug charge stemming from the offense for which he was arrested on August 20, 2019.  *Id.*  A discussion of this nature, which the defense understood not to be a formal plea offer, took place more than once around the time of the hearing and within a month or so afterwards. *Id.*  The prosecutor did not communicate that such a resolution had been approved by supervisors at the United States Attorney's Office.  *Id.*  No written plea offer was transmitted to defense counsel.  *Id.*  The prosecutor also told defense counsel during at least one of these conversations that consecutive sentences were likely because of the unrelated nature of the conduct (Counts of conviction under § 2G2.1 are expressly excluded from grouping under § 3D1.2.)  *Id.* ¶ 2.  Prior to the indictment in the drug case and issuance of the superseding indictment with the newly added count in the video case, defense counsel communicated to the prosecutor that the defendant would stand on his right to a trial.  *Id.* ¶ 3.

### III.   THE PARTIES' POSITIONS[2]

#### A.   Rayevon Deschambault's Position

##### 1.   Motions to Dismiss

###### a.   Prosecutorial Vindictiveness

Mr. Deschambault urges the Court to dismiss the new possession of child pornography count in his video case and all charges in his new drug case.

Regarding the superseding indictment in his video case, he suggests that after the Government "seriously underestimated the difficulty of securing a conviction" on the original charges, "a new prosecutor on the case" added the possession count "which does not require proof of purpose." *Def.'s Video Case Mot. to Dismiss* at 1.  He asserts "serious prejudice in having to suddenly deal with a wholly new charge that has different elements necessary for conviction" and that "[t]here is no new evidence or legitimate consideration to justify bringing this new count shortly before trial." *Id.* at 4-5.

Mr. Deschambault reasons that although "most vindictive prosecution cases involve the re-indictment of a defendant, the mere filing of an indictment can" constitute vindictive prosecution, such as "where the Government files additional charges in response to a defendant's invocation of their statutory rights." *Id.* at 2. He points to *United States v. LaDeau*, 734 F.3d 561 (6th Cir. 2013), where the Court of Appeals for the Sixth Circuit upheld dismissal for prosecutorial vindictiveness after

---

[2]   The Court does not separately describe the parties' positions on the motions to dismiss and motions to suppress in the two cases, as the parties submitted essentially identical briefing in both cases.  After reviewing the parties' memoranda, the Court included and noted any arguments unique to either the video or the drug case.

"a defendant's successful suppression motion caused the Government to indict the defendant on a more serious charge based on the same conduct as the original indictment." *Id.* at 3.

Turning to the two-year gap between his initial indictment in the video case and the Government's decision to add a possession charge and bring a separate drug indictment, Mr. Deschambault submits that where "the government has not identified any newly discovered evidence that might justify its charging decisions," it must show "objective reasons for its charges" to rebut a presumption of vindictiveness. *Id.* at 4 (quoting *United States v. Tobin*, 598 F. Supp. 2d 125, 129, 131 (D. Me. 2009)). He urges that the delay makes "the presumption of vindictiveness . . . readily apparent" because he "suffered serious prejudice in losing over two years of time served credit" on his drug charges, and the Government only brought new charges after his numerous pretrial challenges, "including a contentious hearing on [his] motion to suppress." *Def.'s Drug Case Mot. to Dismiss* at 4.

### b.   Rule 48(b) Delay

Mr. Deschambault next asserts that the Government's "unnecessary delay" constitutes independent grounds for dismissal of all new charges pursuant to Federal Rule of Criminal Procedure 48(b). *Def.'s Video Case Mot. to Dismiss* at 4. He emphasizes that, unlike in *United States v. Begay*, 602 F.3d 1150 (10th Cir. 2010), where the Tenth Circuit reversed a dismissal of charges because the defendant had not alleged vindictiveness, here he is asserting such vindictive purpose and that he has been prejudiced as a result. *Id.*

10

Mr. Deschambault concludes by emphasizing the Government's inaction before bringing "drug trafficking [charges] more than two years after [his] arrest and nearly two years after State trafficking charges were dismissed in lieu of Federal prosecution." *Def.'s Drug Case Mot. to Dismiss* at 6. He says he has "been psychologically affected during the last two years of incarceration, waiting for the 'other shoe to drop' if he continued to contest" his video case charges. *Id.*

### 2.    **Motion to Suppress**

Mr. Deschambault also seeks to suppress the three videos seized from his iPhone relating to the new possession charge in the superseding indictment and at trial on his drug trafficking charges. *Def.'s Video Case Mot. to Suppress* at 1; *Def.'s Drug Case Mot. to Suppress* at 1. In the video case, he also "implicitly request[s] reconsideration [of the Court's orders denying his prior motions to suppress and denying reconsideration] relating to counts one and two" of sexual exploitation of a child. *Def.'s Video Case Mot. to Suppress* at 1.

Mr. Deschambault begins by emphasizing that "Agent Clark's application for the search warrant [of his phone] requests permission to search the whole iPhone without differentiating among any of its particular applications" or types of information sought. *Def.'s Drug Case Mot. to Suppress* at 2. He quotes specific phrases from Agent Clark's affidavit that he says "reveal [the Agent's] understanding of the vast array of personal data accessible via a cell phone" and "leave[] no doubt that the intent [was] to seize every last piece of information available," despite the

11

affidavit's brief recitation of facts lacking "justification for such a sweeping intrusion." *Id.* at 3.

Mr. Deschambault says that although "[t]he only nexus to the iPhone is that the [confidential informant (CI)] contacted him" on it on one occasion and "[t]here is no nexus to [his] iPhone being used to take pictures or videos on August 20, 2019," the single CI call "is offered as the basis for probable cause to search the entire phone (not just the call log)." *Id.* at 4. Addressing a "possible nexus to other parts of the iPhone," Mr. Deschambault points out that "Agent Clark says nothing about videos" and only specifically mentioned "phone calls, text messages, emails, internet, [and] social networking sites" in his affidavit assertion that Mr. Deschambault "likely . . . communicated with drug users, drug suppliers, and others regarding his activities by the phone and internet." *Id.* (quoting No. 2:19-cr-00187-JAW, *Mot. to Suppress II* (ECF No. 41), Attach. 1, *Aff. of Special Agent Austin Clark of the Maine Drug Enforcement Agency* at 6 (*Clark Aff.*)).

Turning to the state warrant, which did mention different types of data to be found in the iPhone, he reasons that the state "court was fully capable of producing a more particularized warrant if it chose, or was asked, to do so." *Id.* According to Mr. Deschambault, the warrant's reference to information "contained *in* the portable electronic device" indicated that neither Agent Clark nor the state judge understood the proper application of *Riley v. California*, 573 U.S. 373 (2014), to cellphones. *Id.* at 5 (quoting *Clark Aff.* at 2) (emphasis in *Def.'s Drug Case Mot. to Suppress*).

12

According to Mr. Deschambault, because the "warrant did not describe any particular applications" such as the video camera, *Riley* "dictates that the warrant to rummage through Deschambault's iPhone was fatally overbroad." *Id.* Citing *Riley*'s "great emphasis on the amount and pervasiveness of personal information accessible through a modern smartphone" and "unequivocal rejection of any attempt to equate a cellphone with a container," Mr. Deschambault submits that "no reasonable police officer, and no reasonable magistrate, could fail to make several connections." *Id.* at 6-8.

"First, if a cell phone is not a container in any sense" and rather "more like a portal into a place," then a general warrant to search the entire device fails the constitutional particularity test. *Id.* at 8. Second, Mr. Deschambault contends that a warrant to search an entire phone does not address the *Riley* Court's concerns for the "pervasiveness of the personal information about private life accessible via a digital device" and renders the judicial officer's assessment of what kind of information is likely to be found, and where, meaningless. *Id.* Mr. Deschambault quotes *United States v. Kuc*, 737 F.3d 129 (1st Cir. 2013), to argue that the state warrant's physical description of the iPhone as the place to be searched "does not 'supply enough information to guide and control the executing agent's judgment in selecting where to search and what to seize, and . . . includes items that should not be seized.'" *Id.* at 9 (quoting *Kuc*, 737 F.3d at 133).

Mr. Deschambault cites the First Circuit's acknowledgment "of the privacy issues generated by the extent of personal information typically available through [a]

smart phone." *Id.* (citing *United States v. Wurie*, 728 F.3d 1, 8 (1st Cir. 2013)).  As argued in his prior motions to suppress, Mr. Deschambault maintains that the Fifth Circuit's analysis in *United States v. Morton*, 984 F. 3d 421 (5th Cir. 2021), of the "implications of *Riley* for enforcement of the Fourth Amendment's particularity requirement remains strong on its face," even though that opinion has been vacated pending en banc review.  *Id.* at 10.

Second, "to the extent the warrant describes 'graphic visual images (such as photographs, videos and scanned images,'" without a "nexus between the alleged drug offense and use of the video camera," Mr. Deschambault says law enforcement lacked probable cause to seize this data.  *Id.* at 5.  "There is nothing in the description of the CI contacting [Mr.] Deschambault, nothing in the police tailing him and arresting him in his car, and nothing in the search of his room in his mother's apartment that creates any probability that there is evidence of drug dealing on his camera," and Agent Clark "does not posit that [Mr.] Deschambault was known to take pictures of his drug dealing or that . . . drug dealers in general are known to do such things."  *Id.* at 13.  Mr. Deschambault submits that "the extent of information accessible through an iPhone only emphasizes the appropriateness of a more particularized approach," particularly where, he says, the Government has demonstrated "the perfect feasibility of particularizing the warrant to a specific [phone] applications."  *Id.* at 14.

Turning to the good faith exception, Mr. Deschambault asserts that "[n]o objectively reasonable police officer would have asked for, or relied on, a general warrant to rummage through a person's cell phone in the wake of" *Riley*'s

14

requirement that "a more particularized place . . . be searched than the iPhone as a whole." *Id.* at 15-16 (citing *United States v. Leon*, 468 U.S. 897 (1984)). Specifically, he asserts that "it was nothing less than reckless disregard for Agent Clark" to execute a warrant in contradiction of *Riley*'s "unmistakable" language and without "notic[ing] that the factual scenario sketched out in the application of the warrant lacked any nexus to videos" or any assertion of a link between video-taking and drug-dealing. *Id.* at 16.

He submits that "suppression of the three videos will indeed deter future Fourth Amendment violations by incentivizing more careful attention to clearly established Supreme Court precedent and more careful attention to contents of" search warrant affidavits. *Id.* at 17.

Next, because the September 24, 2019 federal warrant "was applied for because of the information learned through the unlawful search of" his iPhone pursuant to the state warrant, Mr. Deschambault maintains that any further evidence must be suppressed as fruit of the poisonous tree. *Id.* at 17. He reasons that law enforcement "would not have known to ask for '[v]ideos and photographs depicting sexually explicit conduct' if they had not gained access through the unconstitutional search purportedly authorized by the state warrant." *Id.* at 18.

Mr. Deschambault urges the Court to exclude any evidence of the three videos at trial on the superseding indictment in his video case and at trial in his separate drug case.

### B. The Government's Opposition

#### 1. Motion to Dismiss

### a.   Prosecutorial Vindictiveness

In its opposition to Mr. Deschambault's video case motion to dismiss, the Government argues the new possession count in the superseding indictment "reflects the proper exercise of prosecutorial discretion in charging." *Gov't's Opp'n to Video Case Mot. to Dismiss* at 6.

In its opposition to Mr. Deschambault's drug case motion to dismiss, the Government recounts that Mr. Deschambault was originally arrested and charged by state authorities on a state drug offense. *Gov't's Opp'n to Drug Case Mot. to Dismiss* at 1. It emphasizes that, after a federal grand jury indicted Mr. Deschambault in the video case on October 11, 2019, the state dismissed "the drug charge without prejudice with the option to recharge if [the] U.S. Attorney's Office does not pursue drug charges." *Id.*, Attach. 1, *Maine v. Deschambault, No. 19-4434, Dismissal*.

Noting that Mr. Deschambault has not presented any direct evidence to show actual vindictiveness, the Government says he "cannot meet the heavy burden that he bears" in proceeding on a "realistic likelihood of vindictiveness theory." *Id.* at 5-6. It urges special caution in inferring prosecutorial vindictiveness at the pretrial stage, when "the prosecutor's assessment of the proper extent of prosecution may not have crystallized," *id.* at 6 (quoting *United States v. Goodwin*, 457 U.S. 368, 381-82 (1982)), particularly given the First Circuit's recognition that "the mere bringing of a new indictment with added counts is not in itself vindictive behavior, nor does it raise a presumption of vindictiveness." *Id.* (quoting *United States v. Young*, 955 F.2d 99, 108 (1st Cir. 1992)).

It goes on to reason that "[t]he fact that drug charges were initiated during the pendency of the separate federal sexual abuse prosecution does not make it vindictive," particularly as Mr. Deschambault was aware at the time that his state charges were dismissed, and acknowledges now, "that drug charges were likely to be reinstated in either federal or state court" for the separate drug conduct involving a coconspirator.  *Id.* at 7.  Regarding Mr. Deschambault's contention that the drug case was only filed "after he 'rejected plea offers,'" the Government notes that "[p]reliminary discussions" have not yet resulted in any formal plea offers in either case.  *Id.* at 7 n.1.

Next, the Government says that Mr. Deschambault cannot establish that an indictment in "a separate case alleging different conduct," on drug charges that are less serious than his original charges in the video case (which subject him to a 15 year mandatory minimum), amounts to vindictive prosecution.  *Id.* at 8.

The Government disputes that its new drug charges and superseding video case indictment can be characterized as "punishment" for Mr. Deschambault's pretrial defense efforts, because (1) he "has not prevailed in any of his pre-trial filings," (2) "the drug indictment issued before" the Court denied his latest motion for reconsideration on October 21, 2021, and (3) there is nothing remarkable about his "garden-variety" pretrial motions in the video case.  *Id.*

### b.    Rule 48(b) Delay

Turning to Mr. Deschambault's Rule 48(b) argument, the Government submits "that Rule 48 applies only to post-arrest delay" in the First Circuit.  *Id.* at 9.  As Mr.

Deschambault "was ordered detained on the drug case following his initial appearance" the Rule does not apply "to the time prior to the commencement of proceedings." *Id.* Alternatively, the Government submits that "[e]ven if Rule 48(b) applied here," Mr. Deschambault "has not shown the prosecution of the drug charge is improperly motivated" nor "any prejudice warranting dismissal." *Id.* It furthermore asserts that Mr. Deschambault forfeited any potential constitutional arguments in failing to allege "actual prejudice and that the government delayed indictment to gain a tactical advantage," "any material impairment to his defense," or that "witnesses are unavailable." *Id.* at 9 n.4.

The Government also deems Mr. Deschambault's claim that he will lose over two years of time served credit from the Government's delay in bringing new charges "meritless" because (1) he "offers no authority for the proposition that he would not receive [the] credit"; (2) the "alleged prejudice has nothing to do with the Defendant's ability to defend against the charge"; (3) he can raise the credit issue at sentencing if convicted "but [it] is wholly irrelevant to a motion to dismiss"; and (4) Mr. Deschambault's two cases "are only 'companion cases' insofar as [he] is involved in each." *Id.* at 10.

### 2.    Motions to Suppress

The Government relies on the law of the case doctrine to urge the Court to dismiss Mr. Deschambault's attempt to "relitigate issues already decided by the Court." *Gov't's Opp'n to Video Case Mot. to Suppress* at 1. After recounting the Court's rulings denying Mr. Deschambault's prior motions, it lists cases for the

proposition that the filing of a superseding indictment does not change the fact that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* at 1 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  The Government urges the Court to deny the motions to suppress because Mr. Deschambault has not identified "an intervening change in the law, newly discovered evidence, or clear error" and "the new charge in the superseding indictment involves the same evidence on the same phone." *Id.* at 2-3.

In its opposition to Mr. Deschambault's drug case motion to suppress, the Government similarly submits that "[t]he Court's Orders dated September 21, 2020 (ECF No. 60), and October 21, 2021 (ECF No. 109), should control the outcome" of Mr. Deschambault's motion to suppress video evidence in his new drug case. *Gov't's Opp'n to Drug Case Mot. to Suppress* at 1.  "For purposes of limiting the evidence in dispute," the Government explains that "it will only seek to admit the so-called 'non-sexual' video'" at trial on the drug indictment. *Id.* at 2.  "No other drug evidence was seized from the phone," *id.*, although "[t]he Government will also seek to admit evidence that at the time the phone was seized, an officer dialed the telephone number suspected of being assigned to the device and observed the phone ring and display the officer's telephone number as the calling number." *Id.* at 2 n.1.

### C.   Rayevon Deschambault's Replies

#### 1.   Motion to Dismiss

In reply in his video case, Mr. Deschambault contests the Government's characterization of "the new charges, contained in two separate indictments, as

separate realities" as opposed to "a single Government strategy to force Mr. Deschambault to accept their terms." *Def.'s Reply in Video Case Mot. to Dismiss* at 1. Although he "agrees that no formal plea offers were made," Mr. Deschambault says, "discussions were initiated by the Government for [him] to plead to a new drug charge and a possession charge" in the video case in an attempt "to squeeze [him] to give up asserting his innocence." *Id.* Addressing the Government's argument that the superseding indictment added a less serious charge than the two Mr. Deschambault was already facing in his video case, he says "the Government conveniently ignores the fact that this new charge was brought in conjunction with a wholly new Drug Trafficking Indictment" posing a potential combined sentence of over fifteen years if the Government seeks consecutive sentences, as Mr. Deschambault says it plans to. *Id.* at 2. He says that he "now needs to prepare for two entirely separate types of offenses, one requiring proof on intent to create a video of sexual activity with a minor and the other a possession charge where belief of the victim's age would be a defense" and is "left guessing which charges the Government will go forward with at trial." *Id.* He concludes by asserting that the Government "desperately seeks to rectify original charging mistakes and two years of critical inaction in bringing" the possession charge, despite "absolutely no new evidence" and "no new investigation," and only "after [he] fought the original charges for two years, cross-examined Government agents, and insisted on his right to trial." *Id.*

According to Mr. Deschambault, "the Government concedes proof problems with the sexual exploitation charges" in its attempts to justify the new possession of

child pornography charge. *Def.'s Reply in Drug Case Mot. to Dismiss* at 2. Even if Mr. Deschambault were "to plead or be convicted of only the possession charge" in the video case, with consecutive sentencing on the drug charges, he says "the amount of time [he] faces in this new two indictment scenario is actually greater than what he was looking at relating solely to the sexual exploitation charges." *Id.* In response to the Government's "argument that the Court might take [his]two years of time served into consideration at sentencing," Mr. Deschambault maintains that "legally [he] is not entitled to credit for the time period before Federal drug charges were brought." *Id.*

### 2.     Motion to Suppress

In reply in his video case, Mr. Deschambault first frames his motion to suppress "in the context of this *new* case, prosecuting a different offense in Count III," as distinct from circumstances where the law of the case doctrine would bar "a *successor judge or panel* reopening a ruling made by a *predecessor judge or panel* at *a different stage* of the *same case*." *Def.'s Reply in Video Case Mot. to Suppress* at 1 (emphasis in original). He says the Government "chose to charge [him] separately for a new crime requiring different elements and even different witnesses as the Government has elsewhere asserted" even though "[n]othing has changed in the basic facts of the video case." *Id.* at 7. He maintains that "Count III in the superseding indictment represents a new case against [him] notwithstanding that it is docketed under the old docket number." *Id.* at 9.

In reply in his drug case, Mr. Deschambault stresses his fundamental Fifth Amendment due process right to defend against this new prosecution fully and completely, namely by invoking the exclusionary rule. *Def.'s Reply in Drug Case Mot. to Suppress* at 1. He maintains that in "the [drug] case . . . brought against [him] two years later" the Court's prior orders do not meet the elements of the law of the case doctrine. *Id.* Alternatively, to the extent that the Court's pretrial suppression rulings in his video case apply, he notes that such "interlocutory orders . . . remain open to trial court reconsideration." *Id.* (quoting *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005)).

Mr. Deschambault says *United States v. Moran*, 393 F.3d 1 (1st Cir. 2004), as cited by the Government, is procedurally distinguishable and moreover he acknowledges that "even when the [law of the case] doctrine is sought to be applied in the same case, it is still 'prudential.'" *Id.* at 3 (quoting *Moran*, 393 F.3d at 7). He also distinguishes *United States v. Worthy*, 842 F. Supp. 2d 396 (D. Me. 2012), where the government reindicted the defendant in a fourth superseding indictment, because "[n]o new crime was charged" and "the Court never mentioned law of the case." *Id.*

If the Court finds the law of the case doctrine applicable here, Mr. Deschambault alternatively invokes its "built-in exception to avoid manifest injustice." *Id.* at 6. He reasons first "that it is manifestly unjust to allow the prosecution two years to rethink and reframe its case against him while denying him latitude to rethink and reframe his response to the unlawful seizure of videos from

his iPhone." *Id.* Second, he submits that the Court's prior rulings on the cellphone search are unreasonable under *Riley. Id.*

Mr. Deschambault goes on to cite "precedent for grounding a due process violation in the lack of reciprocal opportunity for the defense to make its case." *Id.* at 7 (citing *Wardius v. Oregon*, 412 U.S. 470 (1973)). He suggests that "where the prosecution brought a new case based on evidence as to which a suppression motion had been previously denied," the question of "whether the use of the law of the case to prevent the defense from bringing a new motion under the new case violated due process . . . may be one of first impression." *Id.* at 8. He invokes "basic considerations of fairness enforced throughout the criminal justice system" to urge that "[e]ven without a dramatic change in the law . . . the defense and prosecution should have reciprocal room to adapt even when issues are comparable between two different cases." *Id.*

## IV.   RAYEVON DESCHAMBAULT'S MOTIONS TO DISMISS

### A.   Legal Standard

#### 1.   Vindictive Prosecution

A vindictive prosecution in violation of the defendant's Fifth Amendment rights occurs when "the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right." *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). "[A] federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness sufficient to establish a due process violation, or even if he demonstrates a likelihood of vindictiveness sufficient to justify a presumption."

*United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997) (citing *Goodwin*, 457 U.S. at 376, 380 n.12).   If the defendant raises a presumption of vindictiveness, the government may rebut the argument "by showing objective reasons for its charges." *Jenkins*, 537 F.3d at 3.

"At the same time, 'the very purpose of instituting criminal proceedings against an individual is to punish; therefore, the mere presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative.'" *United States v. Goguen*, No. 1:16-cr-00167-JAW-1, 2021 U.S. Dist. LEXIS 117217, at *24 (D. Me. June 23, 2021) (quoting *Tobin*, 598 F. Supp. 2d at 128).   "Thus, a defendant may be penalized for violating the law, but not punished for exercising his rights." *Tobin*, 598 F. Supp. 2d at 128.   The First Circuit cautions that "[c]ourts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings." *Goguen*, 2021 U.S. Dist. LEXIS 117217, at *32 (alteration in *Goguen*) (quoting *Stokes*, 124 F.3d at 45); *see Goodwin*, 457 U.S. at 381 ("[A] change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision").

## 2.    Rule 48(b) Delay

Under Federal Rule of Criminal Procedure 48(b)(1), "[t]he court may dismiss an indictment . . . if unnecessary delay occurs in . . . presenting a charge to a grand jury." FED. R. CRIM. P. 48(b)(1).   "This rule is a 'restatement of the inherent power of the court to dismiss a case for want of prosecution.'" *United States v. Kelly*, 661 F.3d 682, 689-90 (1st Cir. 2011) (quoting *United States v. Correia*, 531 F.2d 1095, 1099 (1st

Cir. 1976)). "The standard for dismissal under Rule 48(b) is more exacting than the standard under the Sixth Amendment, and permits dismissal even" absent a constitutional speedy trial act violation. *United States v. Cortez*, No. 20-10198-FDS, 2021 U.S. Dist. LEXIS 27242, at *18 (D. Mass. Feb. 12, 2021). "Rule 48(b) dismissal for 'unnecessary delay' is . . . solely within the court's discretion," *United States v. Machado*, No. 04-10232-RWZ, 2005 U.S. Dist. LEXIS 26255, at *18 (D. Mass. Nov. 3, 2005), and the defendant must show an unnecessary delay that prejudiced him or was improperly motivated.

### B.    Analysis

Mr. Deschambault asserts that his federal drug charges and new possession count in his video case should be dismissed because the Government's decision to bring a drug indictment and add a charge in the video case is a retaliatory attempt to punish him for his pretrial motions, his questioning of law enforcement at the July 2021 evidentiary hearing, and his insistence on his trial rights in the original video case. Alternatively, he contends that the Government's delay in bringing new charges before a grand jury two years after his August 2019 arrest warrants dismissal pursuant to Rule 48(b)(1).

### 1.    Vindictive Prosecution

As Mr. Deschambault does not allege actual vindictiveness, the Court considers whether he has demonstrated circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness. *See Goguen*, 2021 U.S. Dist. LEXIS 117217, at *25 (citing *Jenkins*, 537 F.3d at 3).

25

Mr. Deschambault primarily relies on *Tobin* and *LaDeau*, but both are distinguishable.  First, although the superseding indictment deemed vindictive by the *LaDeau* Court was based on the same evidence and conduct as the initial indictment, the new charges introduced a new conspiracy theory and exposed the defendant to a significantly greater sentence of incarceration.  734 F.3d at 564.  The *LaDeau* Court emphasized that the superseding indictment, issued only five days before trial, followed the defendant's victory in a pretrial motion to suppress "crucial evidence," "thereby eviscerat[ing] the government's possession [of child pornography] case."  *Id.* at 569.  The district court granted the motion to dismiss for vindictive prosecution in part because the new conspiracy charge carried a mandatory minimum, whereas the original charge did not, which doubled the maximum sentence the defendant faced.  *Id.* at 564-65.

As originally charged in the video case in October 2019, if convicted Mr. Deschambault is subject to a fifteen-year mandatory minimum and thirty-year statutory maximum for the sexual exploitation charges.  18 U.S.C. § 2251(a), (e).  The new possession of child pornography charge carries no mandatory minimum and sets a maximum imprisonment term of ten years.  18 U.S.C. § 2252A(b)(2).  Mr. Deschambault's drug charges both carry no mandatory minimum and a maximum imprisonment term of twenty years.  21 U.S.C. § 841(b)(1)(C).

Second, although Mr. Deschambault insists "the principles are identical," he acknowledges that "*Tobin* dealt with Government actions following a successful appeal." *Def.'s Video Case Mot. to Dismiss* at 4.  In *Tobin*, the government attempted

to argue that "unforeseen legal infirmities" with its initial charges, revealed by the defendant's appeal, justified harsher charges following his acquittal.  598 F. Supp. 2d at 131.  The *Tobin* Court noted that this justification was not one of the several (permissible) explanations "that the government routinely invokes, such as newly discovered evidence or intervening criminal activity."  *Id.*  "Rather, the government's loss on appeal constitute[d] its primary justification . . . [t]his will not do."  *Id. Tobin* also expressly distinguished the defendant's challenge to the post-trial filing of more severe charges, which "courts view quite skeptically," as "'much more likely to be improperly motivated' than a prosecutor's decision to file additional charges before trial."  *Id.* at 129 n.6 (quoting *Goodwin*, 457 U.S. at 381).

As this Court has observed, "the classic situation where courts will apply a presumption of prosecutorial vindictiveness is the government's decision to file more severe charges following a defendant's successful appeal of a conviction."  *Goguen*, 2021 U.S. Dist. LEXIS 117217, at *31 (citing *Goodwin*, 457 U.S. at 381; *Tobin*, 598 F. Supp. 2d at 129).  However, "[i]t is 'difficult' to prove circumstantial pretrial prosecutorial vindictiveness."  *Id.* (quoting *United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009)).  "Prosecutors possess 'broad discretion . . . to determine who should be prosecuted and for what crime,'" *id.* (quoting *Bucci*, 582 F.3d at 112), and "[a] prosecutor's '[p]ersistence is not per se vindictive.'"  *Id.* (citing *United States v. Jimenez*, 505 F. Supp. 3d 14, 15 (D. Mass. 2020) (finding no vindictiveness where a prosecutor filed a superseding indictment after the defendant's successful motion to suppress)).

Moreover, the First Circuit has explained that "the mere bringing of a new indictment with added counts is not in itself vindictive behavior." *Young*, 955 F.2d at 108. For example, in *United States v. Heinel*, No. 1:19-cr-10081-IT, 2021 U.S. Dist. LEXIS 196979 (D. Mass. Oct. 13, 2021), the defendants alleged vindictive prosecution in the government's decision to bring a superseding indictment after they refused to engage in plea negotiations and moved to dismiss the original indictment. *Id.* at *8-10. Like Mr. Deschambault, the *Heinel* defendants asserted vindictiveness because the prosecutor brought new charges based on the same conduct underlying the original indictment and without any new evidence. *Id.* at *9-10. Addressing "the sequence of events," the United States District Court for the District of Massachusetts emphasized that "the Supreme Court has held that 'prosecutors should remain free before trial to exercise the broad discretion entrusted to [them] to determine the extent of the societal interest in prosecution.'" *Id.* at *9 (alteration in *Heinel*) (quoting *Goodwin*, 457 U.S. at 382). "Accordingly, 'in the give-and-take of plea bargaining, there is no . . . element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.'" *Id.* (quoting *Jenkins*, 537 F.3d at 4 (internal quotation marks and citation omitted)).

The *Heinel* Court went on to cite the First Circuit's conclusion in *Young* "that where the government has decided to supersede an indictment following a defendant's motion to dismiss, the motion itself may offer 'an obvious, and legitimate, reason why the prosecutor would want to add other, less controversial, charges to the indictment.'" *Id.* at *9-10 (quoting *Young*, 955 F.2d at 108). The district court

extended this rationale to find no presumption of vindictiveness in the government "adding counts against [the defendants] in the subsequent indictments based on the same conduct as was originally alleged" particularly as, unlike in the caselaw cited by the defendants, "the added charges here do not carry harsher statutory penalties than the original . . . charge." *Id.* at *10. The *Heinel* Court concluded that "under the precedent in [the First C]ircuit, which makes raising a presumption of vindictiveness especially difficult in a pretrial setting, [defendants] have not demonstrated circumstances that reveal a sufficient likelihood of vindictiveness to warrant such a presumption." *Id.* at *11-12.

Regarding the "sequence of events" here, Mr. Deschambault stresses that the new drug charge and superseding indictment came soon after the July 2021 evidentiary hearing at which he challenged law enforcement officers' credibility, and after he "rejected plea offers and stood upon his right to a jury trial." *Def.'s Drug Case Mot. to Dismiss* at 1. However, "evidence of suspicious timing alone does not indicate prosecutorial animus." *Bucci*, 582 F.3d at 113 (quoting *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (finding the government's issuance of a superseding indictment six months after the defendant engaged in protected speech by starting a website was "not so close in time" and did not "provide strong evidence that the prosecutor acted vindictively")). As of September 21, 2021, the date the second grand jury was impaneled, Mr. Deschambault's motion for reconsideration remained pending, the Court had not yet ruled on the motion, and the Government had not received any unfavorable resolutions.

Both of Mr. Deschambault's federal cases stem from a 2019 state drug trafficking investigation.  He initially faced state drug charges, which were dismissed in light of Mr. Deschambault's indictment on more serious federal charges in the video case.  Here, unlike in *LaDeau*, the government did not introduce a wholly new theory of the case, nor do Mr. Deschambault's new possession or drug charges carry "longer mandatory minimums and maximums" than initially charged.  734 F.3d at 570.  Mr. Deschambault has not shown that the Government's decision to pursue drug trafficking charges—after he no longer faced prosecution for that alleged conduct on the state side—is vindictive and beyond the bounds of prosecutorial discretion.  *See Stokes*, 124 F.3d at 45 ("[T]he government's decision to refrain from initiating federal criminal proceedings pending the outcome of a parallel (but independent) state prosecution, and to relax the self-imposed restraint only after it had been disappointed by the end result of the parallel proceeding, falls squarely within the encincture of this prosecutorial discretion").

Moreover, the First Circuit recognizes the government's "wide discretion" in making charging decisions.  *United States v. Craigue*, 557 F. Supp. 3d 339, 347 (D.N.H. 2021) (citing *Bucci*, 582 F.3d at 112 (noting "the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime")); *Stokes*, 124 F.3d at 46 (concluding that, without a showing of prosecutorial vindictiveness, the trial court's "disagreement with the government's decision to prosecute [the defendant] under federal law" constituted an "inappropriate" basis to dismiss the indictment); *United States v. Santana*, 6 F.3d 1, 11 (1st Cir. 1993) (explaining that

"federal courts [must] refrain from using [their] supervisory power to conform executive conduct to judicially preferred norms by dismissing charges, absent cognizable prejudice").

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bucci*, 582 F.3d at 112 (alteration in *Bucci*) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). For example, "[t]he Government may charge a defendant with an additional offense if the defendant refuses to plead guilty to a lesser offense." *United States v. Melendez*, 775 F.3d 50, 60 n.38 (1st Cir. 2014). Other courts in this Circuit have recognized that "[e]vidence of actual vindictiveness must overcome the strong 'presumption of regularity (which includes a presumption of good faith)' accorded to a prosecutor's motive for charging decisions," *Espinal-Genao v. United States*, Nos. 09-1537(JAF), 06-0008, 2010 U.S. Dist. LEXIS 103807, at *9 (D.P.R. Sept. 28, 2010) (quoting *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008)), and "[t]he First Circuit is not alone in setting a high standard for actual vindictiveness." *Id.* at *9-10 (collecting cases); *see United States v. Johnson*, 221 F.3d 83, 94 (2d Cir. 2000) ("To find actual vindictiveness requires direct evidence, such as evidence of a statement by the prosecutor, which is available only in a rare case" (internal quotation marks omitted)).

Based on the Court's analysis, Mr. Deschambault has not presented "a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness."

*Tobin*, 598 F. Supp. 2d at 130 (quoting *Jenkins*, 537 F.3d at 3).  Furthermore, Mr. Deschambault has not shown why his case, which lacks the hallmarks of vindictive prosecution, meets the high standard warranting dismissal.

### 2.    Delay and Rule 48(b)(1)

Courts have dismissed charges brought after significant periods of unexplained delay.  *See Machado*, 2005 U.S. Dist. LEXIS 26255, at *18 (dismissing charges following "unnecessary delay" under Rule 48(b) where the government "provided no satisfactory explanation for the long [five year] hiatus in its prosecution of defendant").  A gap of time between indictments, however, does not necessarily render new charges prejudicial or improperly motivated.  *See United States v. Hasan*, 747 F. Supp. 2d 642, 687-88 (E.D. Va. 2010) (rejecting argument that Rule 48(b) precluded the government from "alleg[ing] new charges in a Superseding Indictment based on the same set of facts . . . that were included in the original [i]ndictment" because "dismissal pursuant to Rule 48(b) is not warranted merely by a court's disagreement with the Government's charging decisions, even ones calculated to have tactical effect").

Mr. Deschambault cites *United States v. Craigue*, in which the district court for the District of New Hampshire noted that "the First Circuit has not previously considered whether" a superseding indictment brought with an intent to evade the court's evidentiary rulings against the government "may justify dismissing a superseding indictment under Rule 48(b)."  *Craigue*, 557 F. Supp. 3d at 345.  Here, not only would such tactics be illogical, but the record does not support an intent to

32

evade where the Court's pretrial rulings, both before and after the superseding video case indictment and new drug indictment, went in the Government's favor.

### 3.    The Government's Explanations

At the July 7, 2022, hearing, the Government provided several reasons for its delay.  First, the prosecutor reassigned to the case decided to include a possession charge for strategic reasons, namely that this new charge would not require the testimony of the minor victim at trial.  Second, a few months after Mr. Deschambault's original October 2019 indictment, grand jury proceedings were suspended in this district due to the COVID-19 pandemic.  Third, the Government says it prioritized resolving the more straightforward drug trafficking charges faced by Mr. Deschambault's alleged co-conspirator Zilphy Avery first before bringing Mr. Deschambault's case to a second grand jury.  The Government also explained that it sought two separate indictments to avoid trial severance issues and denied any unfair surprise in reviving drug charges at this pretrial stage.  In response to the Government's explanations, Mr. Deschambault maintains that, absent any new investigation or information, if the Government wanted to pursue possession of child pornography or drug charges, it should have done so from the beginning.

### 4.    The Court's Analysis of the Government's Explanations

On its face, the Government's concern about whether the testimony of the victim would be required or advantageous in relation to the production case as opposed to the possession charge is valid.  Section 2251(a) criminalizes inducing a minor to engage in sexually explicit conduct "for the purpose of producing any visual

depiction of such conduct." 21 U.S.C. § 2251(a). In his defense on the § 2251(a) production charges, Mr. Deschambault has raised this precise issue, arguing that to prove the § 2251(a) counts the Government must demonstrate that "the purpose of producing the visual image was a defendant's dominant motive for using, inducing, or coercing a minor's sexual conduct." No. 2:19-cr-00187-JAW, *Order on Def.'s Purpose Mot.* at 3-4 (ECF No. 79) (quoting *Mem. Re: Mot. to Dismiss Re: Purpose* at 1 (ECF No. 68) (quoting *United States v. Torres*, 894 F.3d 305, 312 (D.C. Cir. 2018))). Assuming that this is the correct standard, a matter not definitely resolved in the First Circuit, whether the Government could prove that Mr. Deschambault's motive for inducing the victim to engage in sexual conduct was to produce the visual images as opposed to some other dominant motive, without the testimony of the victim herself, remains to be seen. But at the very least, in making its charging decisions the Government had a right to be concerned about whether it could meet its burden of proof without her testimony.[3]

By contrast, it is well settled that in a possession case (here involving videotapes), the government will be required to prove (1) that the defendant knowingly possessed the videotapes, (2) that the videotapes contained at least one image of child pornography, (3) that the defendant knew that the videotapes contained an image of child pornography, and (4) that the child pornography had been shipped or transported in interstate or foreign commerce. *See* J. TORRESEN, PATTERN

---

[3]     By contrast, the First Circuit has held that it is not a necessary element of a prosecution under § 2251(a) that the defendant knew the age of the minor victim. *United States v. Henry*, 827 F.3d 16, 23 (1st Cir. 2016).

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT CTS. OF THE FIRST CIRCUIT, § 4.18.2252 (Updated Apr. 27, 2022). Although in a possession case a victim could be called as a witness, it is not essential for the government to do so to sustain its burden of proof.

Here, the record reveals a reasonable basis for the Government's concern about the prospect of calling the victim as a witness. As the Court noted in its September 21, 2020, order, the female in the sexual videos was fourteen years old when they were made. *Order on Mot. for* Franks *Hr'g and Mots. To Suppress* at 8 (ECF No. 60). The police reports and the non-sexual video confirm that the victim knew both Mr. Deschambault and Zilphy Avery, Mr. Deschambault's girlfriend who had been involved in distributing cocaine.[4] *Id.* at 7. Upon questioning by law enforcement, the victim acknowledged that Mr. Deschambault and Ms. Avery had asked her to distribute cocaine, but she said that she had refused to do so. *Id.* at 8. The victim, now about seventeen, might be reluctant to come to federal court, testify before a jury, identify herself as the female in the explicit videos and the male as the Defendant, and describe in detail her relationship, sexual and otherwise, with the Defendant. From the Court's perspective, a prosecutorial decision to charge Mr. Deschambault with possession as opposed to production and potentially spare the victim this presumed ordeal falls well within prosecutorial discretion.

---

[4]    Ms. Avery was driving the motor vehicle (in which Mr. Deschambault was a passenger) that law enforcement stopped on August 20, 2019. *See Order on Mot. for* Franks *Hr'g and Mots. to Suppress* at 3-6 (ECF No. 60). Ms. Avery was separately indicted federally for possession with the intent to distribute cocaine arising out of that traffic stop. She pleaded guilty to this charge, and was sentenced to twelve months and one day of incarceration, three years of supervised release, and a $100 special assessment. *See United States v. Avery*, 2:21-cr-00122-JAW.

Second, the Government accurately notes that during at least a portion of the relevant timeframe, by order of the Chief Judge of this District, no grand juries were convened due to the COVID pandemic. The first grand jury indicted Mr. Deschambault on October 11, 2019, in 2:19-cr-00187-JAW and the subsequent grand jury did not indict him until September 22, 2021, on the new drug charges, No. 2:21-cr-00146-JAW, *Indictment*, and on the possession charge. No. 2:19-cr-00187-JAW, *Superseding Indictment*. The period during which grand juries were either unavailable or limited due to the COVID pandemic is a matter of record of which the Court takes judicial notice. On March 13, 2020, by order of Chief Judge Jon D. Levy of this District, all grand jury proceedings were continued and were subsequently continued through the end of June 2020. No. 2:20-mc-00080-JDL, *General Order* at 1 (Mar. 13, 2020) (ECF No. 1); *General Order 2020-2* at 5 (Mar. 18, 2020) (ECF No. 2); *General Order 2020-5* at 3-4 (Apr. 29, 2020) (ECF No. 5); *General Order 2020-8* at 1 (June 3, 2020) (ECF No. 8). Chief Judge Levy authorized "a one-day session of the grand jury" in Bangor in July 2020, but not in Portland. *General Order 2020-12* at 1 (July 30, 2020) (ECF No. 12). On October 23, 2020, Chief Judge Levy summarized the status of grand juries:

> Beginning in July 2020, the Court convened several limited sessions of the grand jury in Bangor and Portland. However, the current exigent circumstances have required that grand jury sessions be no more than a few hours in length and generally no longer than a single day. Prior to the COVID-19 pandemic, the Bangor and Portland grand juries would have met more frequently than they have to date, and the Government would have had more time to present a far greater number of cases to the grand jury. Based on the Court's experience to date, the extent to which the Court will be able to obtain a quorum of grand jurors to

36

participate in grand jury sessions at either or both court locations in the
months ahead is uncertain.

*General Order 2020-15* at 1 (Oct. 23, 2020) (ECF No. 18).  Chief Judge Levy therefore
continued all grand jury deadlines until normal grand jury operations in the District
were resumed or until January 31, 2021, whichever came first.  *Id.* at 2.  On January
29, 2021, Chief Judge Levy extended this continuance until March 12, 2021.  *General
Order* at 1-2 (Jan. 29, 2021) (ECF No. 24).  As of March 12, 2021, grand jury
operations were "resumed with pre-pandemic frequency."  No. 2:21-mc-00011-JDL,
*General Order 2021-04* at 1-2 (Mar. 12, 2021) (ECF No. 4).

The net effect of these sequential orders from the Chief Judge is that as a
practical matter, the period from March 13, 2020, to March 12, 2021, should be carved
out of the period from October 11, 2019, to September 22, 2021, during which time
Mr. Deschambault may assert that the Government delayed presenting his new
possession and drug charges to a grand jury.  Instead of a delay of twenty-three
months in bringing these new charges, the Government actually had eleven months
at most.[5]  This carve-out period does not entirely explain the delay, but it does explain
much of it.

As for the Government's explanation that it prioritized Zilphy Avery's more
straightforward criminal drug case over Mr. Deschambault's drug case, the Court is
unable to draw many reasonable conclusions.  The Portland federal grand jury

---

[5]    The Court suspects that once grand juries resumed their proceedings, the Government
prioritized certain cases to present to the grand jury and that, as Mr. Deschambault was already in
custody and already under indictment, his case might not have been the highest priority, but there is
nothing in the record to substantiate this suspicion and the Court has not considered it.

indicted Ms. Avery on July 22, 2021.  No. 2:21-cr-00122-JAW, *United States v. Avery*, *Indictment* (ECF No. 1) .  Ms. Avery did not file any pretrial motions and on October 14, 2021, she pleaded guilty to the charge of possession with intent to distribute cocaine base.  *Id.*, *Min. Entry* (ECF No. 29).  The Court sentenced her on March 18, 2022, about eight months after indictment, all of which corroborates the Government's position that Ms. Avery's case was more straightforward than the criminal charges against Mr. Deschambault, which have been vigorously defended. *Id.*, *Min. Entry* (ECF No. 44); *J.* (ECF No. 46).  Even so, the Court is aware that the Government is fully capable of proceeding against more than one co-conspirator in a drug case at the same time and is unclear why its prioritizing Ms. Avery's case affected the prosecution of Mr. Deschambault's drug case.[6]

The Government also noted that it sought two separate indictments in Mr. Deschambault's case to avoid a motion to sever the cases, if the new drug charge were brought under the same docket number as the production and possession charges. The Court does not know how, if it did, this decision delayed presenting the new Deschambault indictments to the grand jury.

The Court's analysis of the Government's explanations for why there was a delay from October 2019 to September 2021 in obtaining the new indictment and superseding indictment of Mr. Deschambault corroborates much of what the Government argued at the July 7, 2022, hearing and substantiates that the

---

[6]     It is possible that the Government proceeded against Ms. Avery first to try to convince her to cooperate against Mr. Deschambault on the drug case.  If so, it was unsuccessful and there is nothing in the record to support this supposition.

Government's charging decisions were not related to the multiple motions Mr. Deschambault filed in his production case or the Court's rulings on those motions. The two most convincing factors were (1) the prosecution's conclusion that it would be prudent to proceed against Mr. Deschambault on a possession charge, given the potential need for the victim's testimony in the production case, and (2) the pandemic carve-out, making the total delay much less dramatic than it appears.

These explanations do not directly resolve why the Government did not seek to indict Mr. Deschambault on all potential charges in October 2019, when the grand jury indicted him on the production charges. But a prosecutorial decision not to initially indict a defendant for all possible criminal charges would not appear to be evidence of prosecutorial vindictiveness, but rather of prosecutorial leniency. As the Government offered sensible explanations for why, having made the initial decision to prosecute Mr. Deschambault only for production, there was a delay in bringing new and supplemental charges, the Court does not conclude that the delay in this case violated Rule 48(b).

Absent a showing of prejudicial delay or vindictiveness and in light of external delays to grand jury proceedings related to the COVID-19 pandemic, the Government's discretionary decision to bring new charges cannot provide a basis for dismissal under Rule 48(b). *See Craigue*, 557 F. Supp. 3d at 347. This same reasoning applies to Mr. Deschambault's vindictive prosecution claim. In addition, none of the traditional markers for vindictive prosecution is present here. The statutory penalties for the new charges, both the possession charge and the drug charges, are

less than the statutory penalties for the production charges and therefore, unlike many vindictive prosecution cases, the Government has not brought more severe charges against a defendant.  Second, the Government did not initiate these new charges to punish Mr. Deschambault for his success in his pretrial motions, because none of his pretrial motions had been successful at the time the new charges were initiated.  *Compare Tobin*, 598 F. Supp. 2d at 128 (vindictive prosecution found where new charge was initiated after the original charge had been dismissed following successful appeal).  Third, as the October 17, 2019, state dismissal of the drug charges against Mr. Deschambault confirms, the United States Attorney's Office was contemplating initiating drug charges against Mr. Deschambault as early as October 2019.  *Gov't's Opp'n to Drug Case Mot. to Dismiss*, Attach. 1, *State Ct. Dismissal* at 1 ("United States Attorney's Office is prosecuting Defendant (not for similar conduct, but at this time State of Maine is dismissing the drug charge without prejudice with the option to recharge if U.S. Attorney's Office does not pursue drug charges").  Fourth, nor would it be unusual for the federal prosecutor to prosecute someone like Mr. Deschambault in the circumstances of his arrest, which was prompted by a controlled drug purchase.  Fifth, the Government made the decision to bring new and supplemental charges pretrial, not following trial or a successful appeal.

### 5.    Conclusion

The Court DISMISSES without prejudice Rayevon Deschambault's Motions to Dismiss, No. 2:19-cr-00187-JAW (ECF No. 118); No. 2:21-cr-00146-JAW (ECF No. 16).

## V.  RAYEVON DESCHAMBAULT'S MOTIONS TO SUPPRESS

The Court next considers the pending motions to suppress.

### A.  The Law of the Case Doctrine

First, the Court considers whether the law of the case doctrine extends to Mr. Deschambault's latest challenge to the search of his cellphone.  "The essence of the law of the case doctrine is the notion that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas*, 982 F.3d 20, 26 (1st Cir. 2020) (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983)).  Relevant here, "a legal decision made at one stage of a criminal . . . proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court."  *Id.* (quoting *United States v. Moran*, 393 F.3d 1, 7 (1st. Cir. 2004)).  "This aspect of the doctrine is 'prudential' and, thus, 'more flexible' than the mandate rule."  *Id.* (quoting *Moran*, 393 F.3d at 7); *see Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) ("[I]nterlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case" (quoting *Pérez-Ruiz v. Crespo-Guillén*, 25 F.3d 40, 42 (1st Cir. 1994))).  "At least in the absence of extraordinary circumstances . . . the law of the case doctrine is inherently discretionary insofar as it affects a trial court's power to revisit its prior interlocutory orders."  *Daumont-Colón*, 982 F.3d at 26.

### 1.  The Court's October 21, 2021 Order

On October 21, 2021, the Court denied Mr. Deschambault's motion for reconsideration of his motions to suppress in the video case, concluding that the July 9, 2021, evidentiary hearing failed to provide a basis for the Court to reconsider its "central finding that law enforcement came upon these videos lawfully while performing a specifically authorized search of Mr. Deschambault's cellphone for evidence of drug trafficking, pursuant to the state warrant." No. 2:19-cr-00187-JAW, *Order on Mot. for Recons. on Mots. to Suppress* at 19. The Court noted, as it had in prior orders, that "[n]othing in the [initial state] warrant limited the locations within the phone where searches were authorized." *Id.* at 18.

The Court went on to "disagree[] with Mr. Deschambault that law enforcement's finding and reviewing of the videos strayed beyond the boundaries of the authorized search categories." *Id.* at 23. The Court explained that "[t]he state warrant authorized law enforcement to look for evidence of drug trafficking and for evidence confirming the identity of the phone owner." *Id.* First, Agent Clark came upon the sexual videos during his initial review of the contents of Mr. Deschambault's phone in furtherance of the underlying drug investigation. *Id.* "As to the second authorized search target," the Court concluded that "the videos '[d]emonstrate ownership, possession or use' of the phone by Mr. Deschambault to record himself with the victim and with Ms. Avery, and further serve to identify him by his physical characteristics," by displaying his distinctive tattoos and capturing the sound of his voice. *Id.* at 24 (quoting *Mot. to Suppress II* (ECF No. 41), Attach. 2, *Search Warrant* at 1 (*State Warrant*)).

Regarding Agent Clark's need to search his cellphone video application, Mr. Deschambault also argued that law enforcement only needed to review stronger, "more typical" indices of phone ownership, like texts, emails, and calls, and would have had sufficient identifying information without looking into Mr. Deschambault's videos. *Post-Hr'g Mem. in Supp. of Mot. to Suppress* at 6 (ECF No. 99). The Court concluded that "[t]he relative evidentiary value of different content types for identifying a phone's owner . . . does not limit law enforcement from carrying out their duly authorized search." *Order on Mot. for Recons. on Mots. to Suppress* at 32. The Court denied Mr. Deschambault's motion for reconsideration of his motions to suppress video evidence seized from his cell phone primarily because the state warrant's "authorization expressly included searching phone videos for evidence of drug trafficking activity or affiliations or further evidence confirming the identity of the phone owner or user." *Id.*

### 2.   Analysis

In urging the Court to exclude the video evidence at trial in his new drug case and on his new possession charge, Mr. Deschambault emphasizes that his latest suppression challenge "involve[s] a whole new prosecution separate and apart from the case in which" the Court denied his motion for reconsideration on October 21, 2021, and invokes the Court's "inherent discretionary authority under [the law of the case] doctrine." *Def.'s Reply in Drug Case Mot. to Suppress* at 4-5. He submits that his situation does not present "the true use of the law of the case doctrine," namely when "a successor judge is asked to reopen a predecessor judge's ruling prior to final

judgment." *Id.* at 5.  Citing *United States v. Lindsey*, 3 F.4th 32 (1st Cir. 2021), in which a "particularity challenge to a cellphone warrant . . . was not properly preserved," Mr. Deschambault urges the Court to rule on the merits of his latest motion to suppress in order to, at the very least, frame the issue on appeal.  *Id.* at 2.

The Government insists that "[t]he filing of a superseding indictment does not provide an opportunity for [Mr. Deschambault] to relitigate legal issues already decided by the Court," particularly without an "intervening change in the law or newly discovered evidence." *Gov't's Opp'n to Video Case Mot. to Suppress* at 2-3.

Now that the Government has brought a new charge and a new case against him, Mr. Deschambault claims "fundamental unfairness" if he is not allowed to renew and reframe his evidentiary challenge.  Mr. Deschambault points out that the Government has reframed its case against him since he filed his previous motions to suppress and motion for reconsideration.  Given that the Court granted Mr. Deschambault's request for a supplemental hearing to give him an opportunity to make his case for suppression (in both cases) with expert testimony, the Court skips over whether law of the case would preclude Mr. Deschambault's newly-filed motions to suppress and instead will consider the merits of Mr. Deschambault's expert-based particularity challenge to the search of his cell phone.

## B.   The Warrant Particularity Requirement & Modern Cellphones

At the July 7, 2022, evidentiary hearing, Mr. Deschambault presented expert testimony in an effort to convince the Court that the state warrant to search his cellphone was fatally overbroad.  His presentation focused on the deficiencies that

the First Circuit identified in an appellant's particularity challenge to a cellphone search warrant in *United States v. Lindsey*.

### 1.    *United States v. Lindsey*

In *United States v. Lindsey*, 3 F.4th 32 (1st Cir. 2021), the First Circuit held that the appellant had waived his argument that *Riley* requires more than a generalized warrant to search a cellphone as a whole.  The *Lindsey* Court summarized the deficiencies in the appellant's warrant particularity challenge:

> [N]o record was developed as to whether the warrant could have been narrowed or provided sufficient guidance to "control the agent's judgment in selecting what to take."  *United States v. Tiem Trinh*, 665 F.3d 1, 15 (1st Cir. 2011) (quoting [*United States v.*] *Upham*, 168 F.3d [532, 535 (1st Cir. 1999)]); *see also* [*United States v.*] *Crooker*, 688 F.3d [1, 10 (1st Cir. 2012)] (explaining the "unfairness" to the government when an untimely argument inhibits "full development of the factual record").  The record does not comprehensively explain how information is stored on modern cellphones or the ways in which the government can access that data without roaming through that phone.  Nor did Lindsey request an evidentiary hearing on the motion.

*Id.* at 41-42.  Mr. Deschambault submits that in *Lindsey*, the First Circuit "showed that it takes the idea seriously that privacy concerns may well require smartphone search warrants to parse out the types of digital information for which there is probable cause."  *Reply to Opp'n to Defense Mot. for Suppl. Hr'g* at 2.

### 2.    The July 7, 2022 Supplemental Evidentiary Hearing[7]

### a.    Rayevon Deschambault's Expert Testimony

---

[7]      Both parties specifically requested that the Court incorporate the testimony presented at the July 9, 2021, evidentiary hearing in its assessment of Mr. Deschambault's motions to suppress.  The Court has considered the testimony presented at the July 9, 2021, and July 7, 2022, evidentiary hearings in resolving the motions in both cases.

Mr. Deschambault called Steven Verronneau, a certified forensic examiner, as an expert witness on cellphone data extraction and review. *See Def.'s Pre-Hr'g Mem.*, Attach. 1, *Aff. of Expert Steven R. Verronneau in Supp. of Def.'s Mot. to Suppress Evidence* (*Verronneau Aff.*).  Mr. Verronneau explained how different cellphone file types are stored and organized, within "directories" and "hierarchies."  He testified to the various tools and protocols used to extract and review phone "artifacts," or types of stored information.  He also explained that law enforcement can limit their searches both before and after the data extraction step, in order to, for example, review only the call log or contact lists, without looking in other applications, or to narrow the review to a specific time period or file type.  For example, a "logical" extraction prompts the reviewer to select any category (or combination of categories) that they wish to search prior to extraction.  Even after extraction, the different data categories will be reported separately, and their contents will not be visible until opened for review.

Regarding how different media types are stored, Mr. Verronneau noted that videos or photos would be found in those specific video or photo applications, unless transmitted or stored in another application.  For example, when a person sends a photo via text messaging, the photo could then be found in the messaging application, even if deleted from the photo application.  He also confirmed that smartphones may contain "unparsed" data, which forensic review software would not automatically sort into a review category, as well as "unallocated space" containing items marked for deletion.

Mr. Verreneau confirmed that, with Cellebrite and other forensic software, forensic examiners have had the capacity to limit data extractions and conduct targeted reviews since at least 2015. *See Reply to Opp'n to Def. Mot. for Suppl. Hr'g*, Attach 1., *Aff. of Expert Steven R. Verronneau in Supp. of Def.'s Mot. to Suppress Evid.* ¶ 4 *(Suppl. Verronneau Aff.)*.  He testified that he reviewed Agent Clark's search warrant in this case, which does not mention this ability to review only specific categories within a phone.

Following Mr. Verronneau's presentation, Mr. Deschambault argued that, based on developments in the law and advancements in technology, a warrant must lay out specific data categories for which police have probable cause to search. Regarding "whether the warrant could have been narrowed or provided sufficient guidance to control the agent's judgment" in choosing what to take from Mr. Deschambault's iPhone, as posed by the *Lindsey* Court, Mr. Deschambault relies on Mr. Verronneau's testimony to assert that Agent Clark could have and should have limited his initial search to specific storage functions or "apps" for which he articulated a specific probable cause nexus, without roaming through the entire phone.

Mr. Deschambault went on to assert that Agent Clark should have informed the state warrant judge of his ability to limit his review of the iPhone, given his close familiarity with the technology, before executing the cellphone search warrant in a manner akin to ransacking everything in a house.

**b.     The Government's Expert Testimony**

47

The Government called Steven Rappold, a detective with the Gorham Police Department, as its expert on digital forensics.  Detective Rappold agreed with Mr. Verronneau's explanation of how Cellebrite and other law enforcement data forensic analysis platforms work.  He testified that in his work he has found photos and videos outside of those discrete labeled phone categories, such as in messaging applications or "parsed" elsewhere.

Emphasizing that evidence can be found in unexpected places, the Government reasoned that the Fourth Amendment does not require a prospective recitation of probable cause for each location to be searched.  According to the Government, the limiting factor is what law enforcement can seize.  Under the terms of the state warrant here, that included videos.  Although law enforcement agents were authorized to look at anything on the target device, the Government stressed that they acted in accordance with that limiting principle in seeking a second federal warrant upon realizing that the investigation might extend beyond drug-related crimes.

### 3.    Rayevon Deschambault's Challenge to the State Warrant

Mr. Deschambault targets Agent Clark's justification[8] for searching his entire iPhone because "[i]t is likely that Rayevon Deschambault communicated with drug users, drug suppliers, and others regarding his activity by the phone or internet,"

---

[8]    Paragraph 16 of Maine Drug Enforcement Agency Agent Austin Clark's affidavit in support of the state warrant reads: "Due to the fact, C.I. 5421 made arrangements to purchase $120.00 worth of cocaine base from DESCHAMBAULT in the area while communicating with DESCHAMBAULT through the phone found in the Explorer, there is probable cause to believe the iPhone contains evidence of drug trafficking."  *Mot. to Suppress II*, Attach. 1, *Aff. of Special Agent Austin Clark of the Maine Drug Enforcement Agency*, ¶ 16.

*Clark Aff.* at 6, as overbroad.  *See Def.'s Video Case Mot. to Suppress* at 7-15.  He reasons that "the Maine District Court Judge who issued the warrant could and reasonably should have insisted that the locations to be searched be stated with particularity."  *Def.'s Pre-Hr'g Mem.* at 4.

### a.   Probable Cause and the Authorized Search

As the Court clarified at the July 7, 2022, hearing, Mr. Deschambault seeks suppression not on the basis that law enforcement conducted an improper search based on the authority granted under the state warrant, but because the warrant itself was issued inappropriately in that it authorized an unconstitutional general search his iPhone.  In its October 21, 2021, order, the Court concluded that Agent Clark stayed within the boundaries of "the authorized search categories" in executing the state warrant because he found and reviewed the videos while "look[ing] for evidence of drug trafficking and for evidence confirming the identity of the phone owner."  *Order on Mot. for Recons.* at 23.  Mr. Deschambault now offers Mr. Verronneau's expert opinion for the proposition that "the authorized search categories" should have been specifically defined in the affidavit and the state warrant to include each application or file type that law enforcement wanted to review.

Stephen Verronneau testified that data is stored in directories within a cellphone, and it is possible to limit a search to certain directories and to control the intensity of a cellphone search.  Thus, for example, a cellphone examiner can limit the extraction of data to include or omit videos, to view a certain date range, or just

review text messages or call logs.  Mr. Verronneau acknowledged, however, that even if a search criteria excluded videos, an examiner might find videos in unallocated space, for example, attached to an email or text message, or stored in particular applications that use visual media such as Instagram.  Detective Stephen Rabbold agreed with Mr. Verronneau's description of the ability of examiners to restrict searches.  There was no evidence from either expert that the search functions for a cellphone could be more restrictive than these general parameters that Mr. Verronneau and Detective Robbold confirmed.

In arguing that the state warrant met the particularity test, the Government cites two post-*Riley* circuit decisions: *United States v. Bishop*, 910 F.3d 335 (7th Cir. 2018) and *United States v. Loera*, 923 F.3d 907 (10th Cir. 2019).  In *Bishop*, the Seventh Circuit rejected an argument that a search warrant that authorized a general search of a cellphone violated the Fourth Amendment's particularity requirement.  910 F.3d at 336-37.  The *Bishop* Court observed that "[c]riminals don't advertise where they keep evidence.  A warrant authorizing a search of a house for drugs permits the police to search everywhere in the house, because 'everywhere' is where the contraband may be hidden." *Id.* (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982)).  The Seventh Circuit concluded that "[i]t is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation." *Id.* at 337.

In *Loera*, the Eleventh Circuit addressed a situation not unlike Mr. Deschambault's case, where in searching a computer for evidence of computer fraud,

law enforcement came upon child pornography.  923 F.3d at 911.  The *Loera* Court held that the "Fourth Amendment does not require police officers to stop executing an electronic search warrant when they discover evidence of an ongoing crime outside the scope of the warrant, so long as their search remains directed at uncovering evidence specified in that warrant."  *Id.*

Mr. Deschambault distinguishes *Loera* as involving a computer, not cellphone, search, and having "nothing to do with pictures taken *by* the camera application on a cell phones."  *Def.'s Video Case Mot. to Suppress* at 11 (emphasis in original). However, the Court is not clear why this distinction matters when it comes to the search warrant in this case for digital evidence of a particular crime.  *See Riley*, 573 U.S. at 393 (describing cellphones as "mini-computers that also happen to have the capacity to be used as telephones").[9]

Regarding *Bishop*, Mr. Deschambault concedes that *Bishop* "concerns a cell phone search," but says there the defendant's challenge was limited to the general nature of the warrant, not the probable cause to look for videos as in his case.  *Id.* at 11-12.  But this contention contradicts Mr. Deschambault's position—as clarified during oral argument—that he is objecting not to the execution of the search itself but to the warrant that authorized the search, contending that it was an unconstitutional general warrant.

---

[9]    *Riley* acknowledges the unique nature of cellphones, noting that "[p]rior to the digital age, people did not typically carry a cache of sensitive personal information with them as they went about their day.  Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception."  573 U.S. at 395.  But Mr. Deschambault has not shown that the basic principle of *Loera* – that law enforcement is not required to stop executing a warrant when it comes upon evidence of another crime – depends upon whether the object of the search is a cellphone or a computer.

In *United States v. Schulte*, No. 17-CR-548 (JMF), 2022 U.S. Dist. LEXIS 78305 (S.D.N.Y. Apr. 29, 2022), the defendant argued that a digital search warrant of his Google account should have established separate probable cause for each category of data sought, and that the resulting warrant was "so facially deficient that reliance upon it is unreasonable." *Id.* at *12. The District Court for the Southern District of New York rejected this particularity challenge, observing that "the warrant in fact lists specific categories of information sought, defined in relation to the subject offenses described in the warrant." *Id.*

Mr. Deschambault similarly maintains that Agent Clark's affidavit failed to articulate a probable cause nexus for each location to be searched in his iPhone. Even if the Court accepts his argument that there should be a nexus between the warrant target and the phone applications to be searched, as the Court observed in prior orders on Mr. Deschambault's motions to suppress, the videos and photos confirmed Mr. Deschambault's identity.

Mr. Deschambault retorts that Agent Clark already knew the phone "obvious[ly]" belonged to him, *see 2021 Hr'g Tr.* at 16:19-23, and thus he did not need to look at photos or videos for confirmation. Even if true, this point does not undermine the legitimacy of the warranted search for evidence related to drug trafficking. Similarly, as the Court observed at the July 7, 2022, hearing, Mr. Deschambault's alleged drug trafficking co-conspirator, who was arrested with him at the traffic stop, is depicted in the videos, providing an additional link between the videos and the authorized search target. *See United States v. Bass*, 785 F.3d 1043,

1049 (6th Cir. 2015) (rejecting a particularity challenge to a warrant authorizing the search of cellphone where the affidavit set forth "a substantial basis to believe" that evidence of the crime existed on the defendant's "cell phone, but it was unclear as to the particular *format* in which the evidence existed" (emphasis in *Bass*)).

Furthermore, even though Mr. Deschambault demonstrated at the July 7, 2022, hearing that a cellphone search can be constructed in a way to eliminate videos, Mr. Deschambault has not made a convincing argument for why a search of his cellphone in this case should have been so limited.  Putting aside the sexual videos, by searching Mr. Deschambault's cellphone, law enforcement was able to identify the fourteen-year-old female who knew both Mr. Deschambault and Ms. Avery, to confirm that she knew that Ms. Avery and Mr. Deshambault sold cocaine, and to establish that they had asked her to distribute drugs for them, but she had declined to do so. *Mot. to Suppress and Request for a* Franks *Hearing*, Attach. 5, *Child Victim and Child Witness Identity Info.* at 2 (*Second Sept. 23, 2019 Townsend Investigative Report*). Mr. Deschambault has not presented a convincing case for why law enforcement in the circumstances presented here should be constitutionally prohibited from searching for videos as opposed to other evidence in the cellphone.

### b.    *Morton* **and the Good Faith Exception**

Mr. Deschambault continues to rely on the Fifth Circuit's vacated opinion in *Morton* for the proposition that "particularity" must be specific to how and where information is stored on a phone, not just what information is sought.  Notably, after the *Morton* panel decision, the Fifth Circuit vacated the decision in order to rehear

the case en banc. *Morton*, 984 F.3d 421, *vacated and reh'g en banc granted*, 996 F.3d 754 (5th Cir. 2021). The Fifth Circuit has not yet issued its en banc ruling. *See United States v. Jackson*, No. 20-30778, 2022 U.S. App. LEXIS 13147, at *13 n.49 (5th Cir. May 16, 2022); *Nevarez v. Coleman*, No. 21-1855 Section "R" (3), 2022 U.S. Dist. LEXIS 119484, at *30 (E.D. La. July 7, 2022).

In its October 21, 2021, order, the Court observed that "even if the Court adopted *Morton*'s reasoning that under *Riley*, 'distinct types of information, often stored in different components of the phone, should be analyzed separately,' the state warrant here did authorize a search of the type of video information that law enforcement reviewed." *Order on Mot. for Reconsideration* at 32 (quoting *Morton*, 984 F.3d at 426). Still, Mr. Deschambault maintains that the Court should adopt the *Morton* panel's interpretation of *Riley* to find the state warrant failed the Fourth Amendment's particularity requirement. *See Def.'s Drug Case Mot. to Suppress* at 10.

In *United States v. McCoy*, No. 2:17-CR-20489-TGB-EAS, 2022 U.S. Dist. LEXIS 30230 (E.D. Mich. Feb. 18, 2022), the District Court for the Eastern District of Michigan faced a similar *Morton*-based argument that "probable cause was required to search each 'place' within the [defendant's] iCloud account—that is, contacts, call logs, text messages, photographs, and the like." *Id.* at *33. The district court observed that "the approach required in *Morton* would impose difficult to implement rules in every case because, given the fact that even a relatively unskilled computer user can conceal data in virtually any format or location on a device or in a

cloud storage account, affiants would be limited to specifying, as places to be searched, those kinds of files or areas that *seem* most likely to contain the sought-after data—even though that data could easily be stored in other places." *Id.* (emphasis in *McCoy*). The *McCoy* Court concluded that even if it did adopt *Morton*'s approach, "any evidence seized from 'places' for which place-specific probable cause was arguably lacking would still be admitted under the good faith exception to the exclusionary rule." *Id.*

Here, the Court similarly concludes that even if it were now inclined to apply *Morton*'s logic, a reasonably well trained officer in 2019 would not have been expected to be aware of a requirement to make certain disclosures as to their ability to conduct limited data extractions, particularly given the ever-developing state of the technology, the fact that pertinent file types may be "unparsed" or otherwise found outside of their labeled categories, and the unsettled nature of this area of the law of searches and seizures—as the forensic experts confirmed at the hearing and the Fifth Circuit's decision to rehear *Morton* en banc suggests. Even under *Morton*, the good faith exception would apply and allow the admission of any evidence seized, pursuant to the specific authorized search categories, from a "place" within Mr. Deschambault's iPhone for which the state warrant affidavit did not establish specific probable cause to search.

Mr. Deschambault alternatively contends that the good faith issue encompasses "whether law enforcement's failure to disclose their technical capability for making targeted searches should be excused." *Reply to Opp'n to Def. Mot. for*

*Suppl. Hr'g* at 3-4.  He submits that Agent Clark's application to extract information from the iPhone without fully explaining his ability to limit his search amounts to "lying by omission" under *United States v. Leon*, 468 U.S. 897 (1984).[10]  Although the good faith exception does not apply where an affiant deliberately misleads an issuing magistrate judge, Mr. Deschambault's point that law enforcement officers have had access to targeted forensic analysis tools since at least 2015 does not render Agent Clark's affidavit knowingly or recklessly false.  *See United States v. Bonner*, 808 F.2d 864, 867 (1st Cir. 1986) ("[t]he exclusionary rule should be limited to those situations where its remedial objectives are best served, i.e., to deter illegal police conduct, not mistakes by judges and magistrates").

Even if the Court accepted his challenge to the breadth of the state warrant, Mr. Deschambault has not shown why, under *Leon*, police did not act in good faith in executing the warrant.  *See United States v. Quiñones*, No. 19-309 (ADC), 2019 U.S. Dist. LEXIS 228285, at *12 (D.P.R. Dec. 9, 2019) (concluding, despite "defects in the warrant application," that law enforcement agents acted in good faith reliance on a

---

[10]    In *United States v. Levin*, 874 F.3d 316 (1st Cir. 2017), the First Circuit described the three *Leon* "bounds of the good faith exception":

  1.    "[I]f the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."
  2.    "[W]here the issuing magistrate wholly abandoned his judicial role."
  3.    Where the executing officer relies "on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"

*Id.* at 322 (quoting *Leon*, 468 U.S. at 923 (citations omitted)).  In *Levin*, the First Circuit referred to a fourth, noting that "[t]he *Leon* good faith exception does not apply where . . . a warrant . . . is so facially deficient - - i.e. in failing to particularize the place to be searched or the things to be seized- - that the executing officers cannot reasonably presume it to be valid."  *Id.* (quotation omitted).

search warrant which "was not facially deficient as it identified Defendant's cellphone as the item to be searched"). Mr. Verronneau's expert opinion on this issue does not change the Court's conclusion in its October 21, 2021, order that law enforcement relied on the state warrant in good faith.

## VI. CONCLUSION

The Court DISMISSES without prejudice Rayevon Deschambault's Motions to Dismiss, No. 2:21-cr-00146-JAW (ECF No. 16); No. 2:19-cr-00187-JAW (ECF No. 118), and DENIES his Motions to Suppress, No. 2:21-cr-00146-JAW (ECF No. 15); No. 2:19-cr-00187-JAW (ECF No. 117).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of July, 2022