UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-cr-00187-JAW |
| | ) | |
| | ) | |
| RAYEVON DESCHAMBAULT | ) | |

**ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL**

This case revolves around the sexual exploitation of a minor through the production of pornographic videos. After a two-day jury trial ending in a guilty verdict, the defendant brings a motion for new trial for four reasons. The Court denies the defendant's motion for new trial because it concludes that: (1) supplying the jury with a copy of the indictment listing the victim as "Victim #1" did not deny the defendant a fair trial; (2) the Court did not improperly instruct the jury on the requisite intent during trial or jury deliberations; (3) the prosecution's opening and closing statements did not deny the defendant a fair trial; and (4) the prosecution's trial strategy does not constitute a miscarriage of justice.

**I.    BACKGROUND**

**A.    Procedural History**

On October 11, 2019, a federal grand jury indicted Rayevon Deschambault with two counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a). *Indictment* (ECF No. 1). On February 21, 2020, Mr. Deschambault filed three motions to suppress; the last motion to suppress included a request for a *Franks*[1]

---

[1]    *Franks v. Delaware*, 438 U.S. 154 (1978).

hearing.  *Mot. to Suppress* (ECF No. 40); *Mot. to Suppress II* (ECF No. 41); *Mot. to Suppress and Req. for Franks Hr'g* (ECF No. 42).  The Government filed a consolidated response to these motions on April 27, 2020.  *Gov't's Resp. to Def.'s Mots. to Suppress and Req. for a Franks Hr'g* (ECF No. 49).  Mr. Deschambault filed replies on May 11, 2020.  *Reply Re: Mot. to Suppress* (ECF No. 51); *Reply Re: Mot. to Suppress and Req. for Franks Hr'g* (ECF No. 52).

On September 21, 2020, the Court denied Mr. Deschambault's three motions to suppress without holding an evidentiary or *Franks* hearing.  *Order on Mot. for Franks Hr'g and Mots. to Suppress* (ECF No. 60) (*First Order on Mots. to Suppress*).  On September 29, 2020, Mr. Deschambault moved for reconsideration of the Court's order denying his motions to suppress.  *Resp. to Ct. Order on Def.'s Mots. to Suppress* (ECF No. 62).  On October 21, 2021, the Court denied Mr. Deschambault's motion for reconsideration of his motions to suppress.  *Order on Mot. for Recons. on Mots. to Suppress* (ECF No. 109).

On September 22, 2021, a grand jury returned a superseding indictment charging Mr. Deschambault with a new count of possession of material containing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2) and 18 U.S.C. § 2256(8)(A).  *Superseding Indictment* (ECF No. 103).  Also on September 22, 2021, the grand jury returned an indictment in a new drug case, charging Mr. Deschambault with one count of distribution of cocaine base and one count of conspiracy to distribute and possession with intent to distribute cocaine base, in

2

violation of 18 U.S.C. §§ 841(a)(1) and 846.   No. 2:21-cr-00146-JAW, *Indictment* (ECF No. 1).

On December 3, 2021, Mr. Deschambault filed a motion to dismiss Count Three for vindictive prosecution.   *Mot. to Dismiss Count Three for Vindictive Prosecution and Rule 48(b)* (ECF No. 118).   On January 6, 2022, the Government filed its opposition.   *Gov't's Opp'n to Def.'s Mot. to Dismiss for Vindictive Prosecution* (ECF No. 122).   On February 2, 2022, Mr. Deschambault filed his reply.   *Def.'s Reply to Gov't's Obj. to Mot. to Dismiss Based on Vindictive Prosecution* (ECF No. 127).   On July 25, 2022, the Court dismissed without prejudice Mr. Deschambault's motion to dismiss for vindictive prosecution.   *Order on Pending Mots.* (ECF No. 141).   On December 30, 2022, the Government filed a notice of dismissal, dismissing without prejudice Count Three of the Superseding Indictment.   *Notice of Dismissal* (ECF No. 199).

The case was tried before a jury from January 18, 2023 to January 19, 2023, and on January 19, 2023, the jury issued a verdict against Mr. Deschambault.   *Jury Verdict* (ECF No. 232).   On April 7, 2023, after being granted the requested time extensions, Mr. Deschambault filed a motion for acquittal, *Mot. for J. of Acquittal Pursuant to F.R.Crim.P. 29(c)(1)* (ECF No. 258), and a motion for new trial.   *Pl.'s Mot. for New Trial* (ECF No. 259) (*Def.'s Mot.*).   On May 12, 2023, the Government responded to Mr. Deschambault's motion for acquittal, *Gov't's Response to Def.'s Mot. for Acquittal* (ECF No. 265) and to his motion for new trial.   *Gov't's Response to Def.'s Mot. for New Trial* (ECF No. 266) (*Gov't's Opp'n*).   On June 9, 2023, Mr.

Deschambault replied to the Government's opposition to a new trial. *Reply Re: Mot. for New Trial* (ECF No. 271) (*Def.'s Reply*).

## II.    THE PARTIES' POSITIONS

### A.    Rayevon Deschambault's Motion for New Trial

#### 1.    The Indictment

Mr. Deschambault submits that "[t]he Government and Defendant engaged in pre-trial negotiations relating to stipulations where the Government referred to the victim as 'Victim #1' and where Defendant objected to such terminology and succeeded in removing any such references." *Def.'s Mot.* at 11.  He explains that the Indictment also referred to the victim as "Victim #1," which was "not properly noted by Defendant and was thus not objected to." *Id.*  He insists that this reference "clearly raises the certain inference that there was more than one 'victim,'" and having "sent this back for the jury to contemplate during deliberations constitutes obvious error and denied the Defendant a [f]air [t]rial." *Id.*

#### 2.    Jury Instructions

During deliberations, the jury sent a note asking: (1) "does intent have to exist prior to the sex act or can it be formed at any time during?" and (2) "as used in the second element does 'engage' mean start or does it mean the entirety of the conduct?" *Id.* at 1.  The Court responded: "In response to your questions, the Court advises . . . the intent does not have to exist prior to the sex act and may be formed during the act." *Tr. of Proceedings* at 237:17-20 (ECF Nos. 249 and 250) (*Trial Tr.*).  Mr. Deschambault submits that the Court's response to the jury's note requesting

4

clarification on the required intent was improper and explains that he "objected to this instruction, arguing that whether the actual statement was true or not, a more subtle and nuanced response was necessary and [he] requested the jury be re-instructed on the necessary elements, especially concerning specific intent." *Def.'s Mot.* at 2. According to Mr. Deschambault, "[w]hether the Court's answer to the jury note was an accurate statement of the law or not . . . in refusing to give the jury the full instruction, and in refusing to re-instruct on specific intent . . . and in refusing to place the issue in context relative to the relevance of a lack of prior planning and a spontaneous decision, the Court committed reversible error." *Id.* at 4. Mr. Deschambault now proposes what he asserts would have been an appropriate instruction, although he "did not explicitly offer the [proposed] language in the moment the [Court's] prepared instruction was discussed." *Id.* at 5.

Mr. Deschambault submits that "[t]he fundamental flaw in the instruction as given is that it did not answer the actual question asked" by the jury when "[t]he question itself betrays confusion in the jury concerning the correct legal standards." *Id.* at 6. He further submits that "[e]ven if the instruction given by the Court was an accurate statement in and of itself, in isolation, it neither addressed the specific, and critical, question posed by the jury nor offered any true clarification of the legal principles at play in this circumstance," making it "reversible error." *Id.*

### 3. Opening and Closing Statements

Mr. Deschambault contends that the prosecution "in both opening and closing statements profoundly prejudiced Defendant and deprived him of a [f]air [t]rial by

continually referencing the age and school status of the victim which was not even a contested issue in the trial and was in fact an issue Defendant was forbidden to even raise with the jury." *Id.* at 6. According to Mr. Deschambault, "[r]aising the issue, and the manner in which it was raised, was designed to prejudice the jury and influence their verdict on improper bases." *Id.* He further contends that the Court "barred Defendant from introducing any evidence of [his] belief concerning the victim's age as well as any representations the victim had made concerning her age," yet "despite this ruling, the Government continually placed before the jury representations of the victim's age even though it was not a contested issue in the case." *Id.* at 7.

Mr. Deschambault asserts that "[t]he only possible motivation" of the Government in making representations of the victim's age was "to prejudice the jury against the Defendant and induce them to decide the case on improper bases, injecting issues broader than what is relevant to guilt or innocence under the statute and clearly meant to inflame emotions." *Id.* For example, Mr. Deschambault specifically asserts that the Government should not have "ask[ed] about each grade [the victim] had been in and in what year, going from 12th to 11th to 10th to 9th grade, again placing her age unnecessarily in the mix" and should not have said that the victim had "just finished the eighth grade" in its closing arguments. *Id.* at 8. According to Mr. Deschambault, "[t]he comments by the prosecution, repeated again and again, were completely irrelevant to any fact at issue in the case," and the Government was "asking the jury to punish the

Defendant for having sex with an 8th grader, not addressing the elements of the offense." *Id.* at 9.

He submits that the prosecution's comment that the victim was "[f]ourteen and unable to consent under the law" is "[n]ot accurate, wholly irrelevant, not backed by any evidence" and telling the jury that "a minor cannot consent to being sexually exploited" was a tactic implemented only to convince the jury that the defendant must be guilty because "consent is not a defense." *Id.* at 9. He further submits that "[i]n a ten minute closing consisting of a mere *seven pages of transcript*, the prosecutor calls for conviction on impermissible bases again and again and again," an error that Mr. Deschambault insists the Court "should remed[y] right here and right now." *Id.* at 10-11 (emphasis in *Def.'s Mot.*).

### 4.  Prosecution Trial Strategy

Mr. Deschambault argues that the "prosecution trial strategy warrants dismissal or a new trial" because "[t]he prosecution dismissed the [related p]ossession charge by claiming they would not need to bring the victim to testify on the possession case" when they "then in fact brought [her] in to testify, while moving the Court to exclude all evidence of Defendant's belief in the victim's age." *Id.* at 12.  He contends that "[a]fter securing a positive ruling banning Defendant from discussing his belief in the victim's age, as well as excluding from the jury a social media post that lists her age at the relevant time as 23 . . . the Government went on to continually refer to the '8th grader' and the 14 year old girl just out of middle school." *Id.*  He further contends that the government "also told the jury

that she could not consent to the sexual relationship and also secured a jury instruction that consent was not a defense, though consent was not an issue in the trial and there was no evidence offered that a 14 year old could . . . consent to sexual activity," making this "a wholly irrelevant argument in the case which typified the Government approach to the trial." *Id.* at 12-13.

Mr. Deschambault explains that the prosecutors "brought a new [c]ount of [p]ossession of [c]hild [p]ornography after two years," which "resulted in another one and a half year delay" that the prosecutors justified by "claiming they would not need to bring in the victim to testify." *Id.* at 13. He asserts that "[t]hen they brought in the victim anyways and dismissed the [p]ossession case at jury selection, attempting to prohibit, and succeeding in prohibiting, the Defendant's ability to introduce evidence that the victim lied about her age and acted as an adult, sexually and otherwise." *Id.* Mr. Deschambault insists that "[t]his Court should not sanction this gamesmanship which in fact denied Defendant a [f]air [t]rial." *Id.*

### B. The Government's Response

#### 1. The Indictment

The Government submits that Mr. Deschambault has waived his argument that the Indictment including "Victim #1" was improperly submitted to the jury because he "offered no objection at trial" while he "now makes the leap that the jury must have inferred that there was more than one victim." *Gov't's Opp'n* at 12-13. It further submits that "[t]his argument is baseless, entirely speculative, and not

supported by any facts in the record" because "[a]t no time was there any evidence or argument about other victims." *Id.* at 13.

### 2.    Jury Instructions

The Government submits that the jury "was properly instructed according to the Court's accurate interpretation of the case law [Mr. Deschambault] argued should apply." *Id.* at 1.  Specifically, the Government asserts that during trial the "Court rightly ruled . . . that Defendant could have more than one purpose so long as the purpose was 'significant.'" *Id.* at 2.  Regarding the jury's note on intent, the Government rejoins that "[i]t was not error for the Court to decline to reread to the jury written instructions they already possessed, or to answer the jury's note by providing an answer with which defense counsel agreed." *Id.*

The Government contends that "there was no reversible error" arising from the Court's response to the jury's note regarding intent because "the Court provided the only reasonable answer supported by law, that is, that 'a defendant may have more than one motive or purpose for engaging in sexual conduct, but the Government must prove beyond a reasonable doubt that at least a significant purpose for engaging in the sexual conduct was the production of a visual depiction.'" *Id.* at 4.  In fact, the Government asserts that Mr. Deschambault "agreed" that this language "was the right answer under these circumstances we're at now." *Id.* (internal quotations omitted).

### 3.    Opening and Closing Statements

The Government first submits that Mr. Deschambault has waived his objections to the Government's opening and closing statements because he "failed to timely object to any portions of the Government's opening statement or closing argument." *Id.* at 6. The Government then "addresses each category of statements Defendant now challenges," arguing that none of them constitutes reversible error. *Id.* Regarding the Government's use of the victim's age at trial, it contends that her "age was a live issue throughout the trial" and "the Government was put to its burden of proof that an actual minor was involved in the sexual conduct" because the "parties did not reach a stipulation as to the minor's age." *Id.* at 7. According to the Government, the "defense never conceded this issue during the Government's presentation of evidence," and as "an essential element, it was entirely proper for the Government to solicit this testimony and to argue to the jury that it had proven the element." *Id.* The Government insists that "[a]t no point was the Government relieved of its obligation to prove the minor's age." *Id.* at 7. Regarding Mr. Deschambault's assertion that the Government's references to the victim's grade level were prejudicial, the Government rejoins that "[b]oth are factually accurate" and "[n]either phrase drew an objection" at trial. *Id.* at 8.

Further regarding the victim's age, the Government submits that Mr. Deschambault "once again confuses the Government's obligation to prove the victim's age with his knowledge of the victim's age," saying that "the former is an essential element of the offense" while "[t]he latter is irrelevant." *Id.* at 12. According to the Government, "[a]lthough Defendant was barred from presenting

testimony or argument about whether he knew the victim's age, the Government was required to prove the victim was a minor" because "[a]t no time was the jury presented with a stipulation on the victim's age." *Id.* The Government specifies that "[a]lthough counsel conceded the issue in his closing argument, at no time was such a concession of this essential element made during the Government's case-in-chief," so it was "entirely proper—and legally required—for the Government to prove the victim's age and comment about this element in opening and closing." *Id.*

In response to Mr. Deschambault's contention that the Government erred in arguing that the victim could not legally consent to being sexually exploited, the Government contends that Mr. Deschambault "did not object to these arguments at trial" and moreover that "the arguments mirrored the jury instructions and accurately stated that consent is not a defense to the charged conduct." *Id.* at 10. The Government further contends that Mr. Deschambault "offered testimony and argument that bordered on suggesting the sexual conduct was consensual," making it additionally necessary "for the Government to cite the law to the jury that a minor cannot consent to being sexually exploited." *Id.* at 10-11.

### 4. Prosecution Trial Strategy

The Government submits that while "Defendant alleges that the prosecutorial strategy warrants dismissal or a new trial," this is "the very same charge that, when originally filed, Defendant moved to dismiss for alleged prosecutorial vindictiveness." *Id.* at 13. According to the Government, Mr. Deschambault "can hardly now argue that it was improper for the Government to

11

dismiss a charge that he previously argued (unsuccessfully) was vindictively filed." *Id.* The Government further submits that "the motion for leave to dismiss Count Three was filed on December 30, 20[2]2," granted by the Court on January 3, 2023, and Mr. Deschambault "did not raise an objection to the dismissal until January 18, 2023—the first day of trial." *Id.*

## C.    Rayevon Deschambault's Reply

Mr. Deschambault submits that "[t]he assertions of the Government that age was a legitimate issue in the case represents the height of irony" because "[t]he Government introduced the victim's birth certificate, without objection, which fully established the age of the victim." *Def.'s Reply* at 1. According to Mr. Deschambault, "the Government again and again went to the well, raising the issue of the victim's age and school status over and over, while Defendant was barred by the Court from raising the issue of her age." *Id.* He insists now that the Government used an "improperly admitted hearsay exhibit to argue that the two videos were created at different times and therefore it was more likely that Mr. Deschambault had the required purpose under the statute to create child pornography" when "all other evidence showed that the filming was a spontaneous decision when sexual activity had already begun." *Id.* at 2.

Mr. Deschambault contends that "[i]t is certain that the only issue litigated in the trial was whether the Government could prove beyond a reasonable doubt the purpose element of the statute," and the "assertion by the prosecutor that the minor status of the victim was a live issue at trial is false." *Id.* In conclusion, Mr.

12

Deschambault "asserts that he was denied a fair trial by the Government's blatant strategy as well as by the instructions to the jury prior to and during deliberations." *Id.* at 3.

## III.   LEGAL STANDARD

A motion for new trial in a criminal action is governed by Federal Rule of Criminal Procedure 33 and is addressed to the trial court's discretion. Rule 33 provides:

> (a) **Defendant's Motion.**  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.

FED. R. CRIM. P. 33.  In general, a "district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986).  On the other hand, there are "definite limits upon a district court's right to upset a jury verdict." *Id.* at 322.  The First Circuit has explained that the "remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996) (quoting *United States v. Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979)).

At the same time, this Court possesses "greater latitude in considering a motion for a new trial than it does in considering a motion for acquittal." *United States v. Merlino*, 592 F.3d 22, 33 (1st Cir. 2010).  For instance, the Court may evaluate "whether its evidentiary rulings at trial were correct." *United States v.*

*Dimasi*, 810 F. Supp. 2d 347, 362 (D. Mass. 2011) (citing *United States v. Wilkerson*, 251 F.3d 273, 279 (1st Cir. 2001)).

In analyzing the grounds for Mr. Deschambault's Rule 33 motion for new trial, the Court has considered whether he preserved the issue, waived, or forfeited it. *See United States v. Jinan-Chen*, 998 F.3d 1, 6 (1st Cir. 2021) (An issue is waived "when a party purposely abandons it, either expressly or by taking a contrary position at trial"); *United States v. Gaffney-Kessell*, 772 F.3d 97, 100 (1st Cir. 2014) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) ("[F]orfeiture refers not to affirmative conduct but rather to a 'failure to make the timely assertion of a right'")).

Even so, the standards for a Rule 33 motion are rigorous, and "a trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result." *Rothrock*, 806 F.2d at 322. Denial of such a motion will not be reversed, absent a miscarriage of justice or unless the evidence heavily preponderates against the verdict. *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir. 1970).

## IV.   DISCUSSION

Mr. Deschambault claims that a new trial is warranted for four reasons: (1) sending the indictment to the jury with the victim listed as "Victim #1" denied Mr. Deschambault a fair trial; (2) the Court improperly instructed the jury on intent during trial and deliberations; (3) the Government's opening and closing statements further denied Mr. Deschambault a fair trial; and (4) the prosecution's strategy

warrants dismissal or a new trial. The Court denies Mr. Deschambault's motion for new trial because Mr. Deschambault has failed to convince the Court that a new trial is necessary to prevent a miscarriage of justice or that the evidence heavily predominates against the verdict.

### A.   The Indictment

Mr. Deschambault argues that a new trial is warranted because the jury received a copy of the Indictment listing the victim as "Victim #1." He contends that this necessarily means that the jury assumed there was more than one victim, rendering the jury biased against Mr. Deschambault. *Def.'s Mot.* at 11. Mr. Deschambault, however, provides no legal support for this argument, and the Court finds no caselaw to indicate that it would be appropriate to grant a motion for new trial based on a single use of "Victim #1" in the indictment sent to the jury for review.

Mr. Deschambault concedes that he failed to bring this issue to the attention of the Court during trial. *Id.* at 11 ("This was not properly noted and by Defendant and thus not objected to"). If Mr. Deschambault had raised this issue with the Court, the indictment could easily have been redacted to eliminate the number. Although the Court does not view Mr. Deschambault's failure to object to constitute a waiver, *see Jinan-Chen*, 998 F.3d at 6, Mr. Deschambault forfeited the issue, and therefore the plain error standard of review applies. *Gaffney-Kessell*, 772 F.3d at 100. "Issues forfeited . . . are subject to plain error review." *United States v. Blake*, 904 F.3d 97, 99 (1st Cir. 2018) (citing *Olano*, 507 U.S. at 733-34).

The Court does not conclude that any error occurred much less plain error. There was no evidence or argument during this trial that there was another victim, and it is wholly speculative that the jury concluded that the victim in this case was only one of many.  There is nothing on the face of the superseding indictment that was submitted to the jury to suggest that Mr. Deschambault was charged elsewhere with other crimes against other victims.  Furthermore, the Court expressly instructed the jury that the superseding indictment in the case was not evidence, and that the indictment proved nothing.  The Court also instructed the jury that it must base its verdict solely on the evidence produced at trial and not on speculation.  As the First Circuit has repeatedly observed, "juries are presumed to follow . . . instructions."  *United States v. Stewart-Carrasquillo*, 997 F.3d 408, 423 (1st Cir. 2021) (quoting *United States v. Amaro-Santiago*, 824 F.3d 154, 160 (1st Cir. 2016)).

In short, a single unobjected to reference to "Victim #1" in the superseding indictment does not so unfairly prejudice the defendant as to result in a miscarriage of justice.  *See Andrade*, 94 F.3d at 14 ("[R]emedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict'") (quoting *Indelicato*, 611 F.2d at 386).

## B.    Jury Instructions

Mr. Deschambault submits that a new trial is warranted because the Court improperly instructed the jury on intent both at the close of evidence and during

deliberations.  *Def.'s Mot.* at 1.  According to Mr. Deschambault, the Court's failure to instruct the jury that to prove purpose the Government must show that Mr. Deschambault's dominant motive for engaging in the sexual activity was to make a video constitutes a miscarriage of justice and the Court compounded its error in its response to a jury note during deliberations.  *Def.'s Mot.* at 1.

### 1.    Background – The Final Jury Instructions

At trial, the Court instructed the jury that to find Mr. Deschambault guilty of the charged offenses, the Government must prove each of the following elements beyond a reasonable doubt:

> First, that an actual minor, that is, a real person who was less than eighteen years old, was depicted.  Second, that Mr. Deschambault used the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct.  And, third, that the visual depiction was produced using materials that had been shipped or transported in interstate or foreign commerce by any means.

*Trial Tr.* at 205:3-10.  Prior to trial, on November 28, 2022, Mr. Deschambault proposed an instruction on the second element—the Defendant's purpose in engaging in the sexual conduct—and requested that the Court instruct the jury that to prove its case, the Government had to prove that Mr. Deschambault's "sole or dominant motive for engaging in the sexual conduct" was to create a visual depiction of the sexual conduct:

> The Government must prove beyond any reasonable doubt that Rayevon Deschambault engaged in sexual activity with a minor for the purpose of creating a visual depiction; it is not sufficient simply to prove that he purposely recorded a video.  The Government must prove beyond a reasonable doubt that producing the visual image was Deschambault's sole or dominant motive for engaging in the sexual conduct.

*Def.'s Proposed Jury Instucs.* at 1 (ECF No. 165).   In support of his requested instruction, Mr. Deschambault cited *United States v. McCauley*, 983 F.3d 690, 695-97 (4th Cir. 2020), *United States v. Torres*, 894 F.3d 305, 312 (D.C. Cir. 2018), and *United States v. Palomino-Coronado*, 805 F.3d 127, 130, 131 (4th Cir. 2015).   On December 5, 2022, the Government objected to this instruction.   *Gov't's Objs. to Def.'s Proposed Jury Instrucs.* (ECF No. 183).   The Government argued that the proposed instruction was contrary to the language of 18 U.S.C. § 2251(a) and to a First Circuit case, *United States v. Morales-de-Jesús*, 372 F.3d 6, 21 (1st Cir. 2002).

Prior to trial, the Court prepared a draft set of final jury instructions and proposed an instruction that adopted some, but not all of Mr. Deschambault's proposed instruction; it read:

> The second element of the offense is that Mr. Deshambault used the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct.   To prove Mr. Deschambault's purpose, the Government must show beyond any reasonable doubt that he engaged in the sexual activity with the specific intent to produce a visual depiction.   It is not sufficient to simply prove that he recorded a video.   The Government must prove beyond a reasonable doubt that producing the visual image was a significant motive for his engaging in the sexual conduct.   This means that Mr. Deschambault acted with the intent to create visual depictions of sexually explicit conduct and that he knew the character and content of the visual depictions.

On January 18, 2023, Mr. Deschambault proposed a slightly different formulation of this instruction:

> The second element of the offense is that Mr. Deshambault used a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct.   To prove Mr. Deschambault's purpose, the Government must show beyond any

reasonable doubt that he engaged in the sexual activity with the specific intent to produce a visual depiction <u>and that he knew the character and content of the visual depictions; it is not sufficient to simply prove that he recorded a video.</u>  The Government must prove beyond a reasonable doubt that producing the visual image was a significant motive for his engaging in the sexual conduct.

*Def.'s Proposed Jury Instruc. Modifying the Ct's Proposed Instruc. Relating to Purpose and Intent* (ECF No. 221).

The Government had proposed that the Court instruct the jury on this issue in accordance with the Sixth Circuit's model instruction:

The term "for the purpose of" means that the defendant acted with the intent to create visual depictions of sexually explicit conduct, and the defendant knew the character and content of the visual depictions.

*Gov't's Requested Jury Instrucs.* at 5 (ECF No. 169).  In support of its position, the Government cited the Sixth Circuit model instructions and *United States v. Frei*, 995 F.3d 561, 565 (6th Cir. 2021).

On January 19, 2023, the Court held a charge conference and extensively discussed the correct instruction on the second element of the offense.  *Trial Tr.* at 171:23-184:3.  The Court noted that the parties had not presented the Court (and the Court could not find) any First Circuit authority directly on point as to the correct instruction on the intent element of a sexual exploitation of a minor charge.  *Id.* at 174:15-17.  The Court discussed *Morales-de-Jesús*, the First Circuit case, and observed that the First Circuit did not address the proper instruction on this issue, but the Court concluded that the *Morales-de-Jesús* analysis suggested that the Court was on the "right track" in formulating an instruction on this element.  *Id.* 173:11-174:14.

19

Absent any controlling First Circuit authority on point, the Court turned to whether it should instruct the jury that the Government had to prove that, in producing the video, Mr. Deschambault's sole or dominant motive was to create the visual depiction. *Id.* at 174:18-21. The Court rejected Mr. Deschambault's "sole or dominant" motive request. *Id.* at 174:22. The Court first noted that this standard does not appear in the language of the statute and if Congress had intended such a standard, it could easily have inserted it, so "the defendant's proposal is not buttressed by the language of the law." *Id.* at 174:22-175:3. The Court then reviewed each case cited by Mr. Deschambault and concluded that *Palomino-Coronado*, *Torres*, and *McCauley* do not stand for the proposition that the Government must prove that a defendant's "sole or dominant" purpose in engaging in sexual conduct with a minor is to produce a sexually explicit depiction. *Id.* at 175:4-176:2. Finally, the Court noted that this standard would "effectively eliminate a wide swath of the production of child pornography" because a defendant "could always say that his intent was to have sex with the minor and that videotaping was secondary or . . . an afterthought." *Id.* at 177:5-13.

But the Court adopted a formulation found in *McCauley*, namely that the Government must prove that "producing the visual image was at least a significant motive for [Mr. Deschambault's] engaging in sexual conduct." *Id.* at 175:21-176:2. Thus, the Court "accepted the defendant's cited caselaw on that." *Id.* at 176:3-8. In doing so, the Court rejected the Government's formulation because it would come close to making the sexual exploitation of a minor a strict liability crime, imposing a

20

fifteen-year mandatory minimum sentence to a person who, during a sexual act with a minor, impetuously took one photograph of the sexual activity. *Id.* at 176:9-20. But the Court did agree with a portion of the Government's proposal by including the requirement that the Government prove that Mr. Deschambault "acted with the intent to create visual depictions of sexually explicit conduct, and the defendant knew the character and content of the visual depictions." *Id.* at 176:21-177:4.

The Court acknowledged that this was something of an "odd juxtaposition" because the defense that a defendant wished to have sex with a minor struck the Court as an "odd defense." *Id.* at 178:3-6. The net affect is that the Court agreed with the Government that a defendant could have more than one motive for engaging in sexual activity with a minor and decided to instruct the jury that the Government had to prove that producing a sexually explicit depiction was a significant purpose in his engaging in such sexual activity. *Id.* at 178:10-16.

In response, Mr. Deschambault agreed that his request that the Court instruct the jury that the defendant's "sole" motive was to create the visual depiction was wrong and "shouldn't even have been requested." *Id.* at 180:19-21. But he continued to request that the Court instruct the jury that the Government had to prove a dominant motive. *Id.* at 180:21-22. Furthermore, upon realizing that his requested language—that it is not sufficient to simply prove that the defendant recorded a video—was in the instructions, Mr. Deschambault withdrew

his second requested instruction and pronounced the result "perfect." *Id.* at 181:20-183:4.

Consistent with this extensive discussion, the Court instructed the jury on the second element as follows:

> The second element of the offense is that Mr. Deschambault used the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. To prove Mr. Deschambault's purpose, the Government must show beyond any reasonable doubt that he engaged in the sexual activity with the specific intent to produce a visual depiction. It is not sufficient to simply prove that he recorded a video. The Government must prove beyond a reasonable doubt that Mr. Deschambault acted with the intent to create visual depictions of sexually explicit conduct and that he knew the character and content of the visual depictions. To prove its case, the Government must prove beyond a reasonable doubt that producing the visual image was at least a significant motive for his engaging in the sexual conduct.

*Id.* at 205:20-206:8.

## 2.     Further Background – The Jury Question

After approximately three hours of deliberation, the jury sent a note to the Court with the following questions:

> Question one, does intent have to exist prior to the sex act or can it be formed at any time during? . . . The second question, as used in the second element does 'engage' mean start or does it mean the entirety of the conduct?

*Id.* at 237:9-16.[2]

The Court proposed and ultimately responded to question one with the following response: "the intent does not have to exist prior to the sex act and may be formed during the act." *Id.* at 237:19-20. Mr. Deschambault objected to this

---

[2]     Mr. Deschambault did not and does not object to the Court's response to Question 2.

instruction, arguing that whether the actual statement was true or not, a more subtle and nuanced response was necessary. *Id.* at 237-40. He requested that the jury be re-instructed on the necessary elements of the offense, especially concerning specific intent. *Id.* Specifically, he requested the Court instruct the jury that whether his intent was formed prior to or during the sex act is in fact a relevant factor in the jury's determination of whether making the video was a significant purpose of his engaging in the sexual activity. *Id.* Mr. Deschambault's discussion with the Court proceeded as follows:

> MR. MASELLI: I would agree with [question number] two, Your Honor. I would not agree with [question number] one. I would suggest that [the jurors] just are read the instruction again that involves the elements of the crime.
>
> THE COURT: Right. Well, I think that it's a legitimate question whether or not the intent has to be formed prior to the sex act, and I -- I don't think that's the law. I just don't think it's the law. You don't have to agree with the child to -- you don't have to -- you can form the intent to create -- to produce child pornography during a sex act. Otherwise, you would have to -- the statute would require an agreement prior to the sexual act -- sexual act itself, which makes no sense and I don't think that's the law.
> . . .
>
> MR. MASELLI: I would again request the definition of specific intent which I asked for earlier, that the jury is -- they're not differentiating between intent and specific intent, so we don't even know which exact part of the instruction that they're referring to, and that's another reason why I'm asking for the entire instruction to be given again. Although they have the instructions, right?
>
> THE COURT: They have the written instructions.
>
> MR. MASELLI: And I think that for instance in the [*United States v.*] *McCauley,* [983 F.3d 690, 695-97 (4th Cir. 2020)] case, which is I believe when we talk about the spontaneous pulling out of -- of the -- the video during, that it's -- it's -- it's one of the factors that goes toward

whether or not having sex -- making the video was a significant purpose to engaging in sex, and so I think that it remains a relevant factor. Even though I agree as a general principle that any kind of intent can be formed during the situation, but I think it's – it's more complicated than that.

THE COURT: All right. Well, I'm going to answer the question they've asked, not the questions they haven't.

MR. MASELLI: Thank you.

*Trial Tr.* at 238:12-40:4. The Court then responded to question one of the juror note as set forth above.

### 3.     Analysis

Mr. Deschambault now submits that the Court improperly instructed the jury by refusing to provide—either during trial or during deliberations—his proposed instruction allegedly derived from *McCauley* that 18 U.S.C. § 2251(a)'s purpose element requires that the defendant's "dominant motive for engaging in sexual activity" was to make a video.[3] *Def.'s Mot.* at 1. As noted earlier, however, the Court addressed this objection at length during trial after acknowledging that there is no First Circuit authority precisely on point. *Trial Tr.* at 172:8-174:21. The Court will not reiterate here what it described above, except to note that the Court applied the same reasoning in refusing to respond to the jury question by instructing the jury on dominant motive as its earlier refusal to instruct the jury in

---

[3]       It is not clear whether Mr. Deschambault is reasserting that the Court should have brought the jurors back into the courtroom and re-read "the entire instruction." *Trial Tr.* at 239:11-17. The Court declined to do so, noting its practice of sending copies of the final instructions to the jury room. The Court views its decision to reject the request to bring the jury back into the courtroom and re-read instructions already before the jury as within its discretion.

its final instructions that the Defendant's dominant motive for engaging in sexual activity need be to make a sexual video.

In sum, Mr. Deschambault's motion for new trial does not alter the Court's reasoning as to why the Court's jury instruction using "significant purpose" was in fact in line with *McCauley*, and the Court reaffirms its conclusion that no instruction on "dominant motive" was required or merited either at trial or during deliberations. *See* 983 F.3d at 695-96 (holding that under 18 U.S.C. § 2251(a), "the language '*the* purpose' requires that the filming be at the very least a significant purpose in the sexual conduct itself, not merely incidental") (emphasis in original) (citing *Mortensen v. United States*, 322 U.S. 369, 374 (1944)).

### C.   Opening and Closing Statements

Mr. Deschambault argues that the Government's opening and closing statements "profoundly prejudiced Defendant and deprived him of a [f]air [t]rial by continually referencing the age and school status of the victim which was not even a contested issue in the trial and was in fact an issue Defendant was forbidden to even raise with the jury." *Def.'s Mot.* at 6.  Specifically, he contends that references to the victim as an eighth grader who had just finished middle school "induce[d] them to decide the case on improper bases, injecting broader issues than what is relevant to guilt or innocence."  *Id.* at 7-9.  He submits that despite the Court's ruling that prohibited any evidence of Mr. Deschambault's belief concerning the victim's age, *Trial Tr.* at 8:4-10:7, "the Government continually placed before the

jury representations of the victim's age even though it was not a contested issue in the case." *Def.'s Mot.* at 7.

Mr. Deschambault further argues that various comments made by the Government during opening and closing statements denied him a fair trial. Specifically, he submits that the Government's reference to the victim being "sexually exploited" and its description of the filming location as a "dark and dirty room" unfairly prejudiced the jury against the defendant. *Id.* at 8-9.

### 1.    Legal Standard

The prosecutor's duty in a criminal prosecution is to do justice. *Berger v. United States*, 295 U.S. 78, 88 (1935). "[I]t is plainly improper for a prosecutor to imply reliance on knowledge or evidence not available to the jury." *United States v. Smith*, 982 F.2d 681, 683 (1st Cir. 1993). Before granting a new trial based on a prosecutor's improper comments, a court must "determin[e] 'whether [those comments] ha[ve] so poisoned the well that a new trial is required.'" *United States v. Robinson*, 473 F.3d 387, 398 (1st Cir. 2007). In so doing, the court considers such factors as: (1) the extent of the improper remarks, (2) the context, (3) the likely effect of any curative instructions given by the judge, and (4) the weight of the evidence against the defendant. *Id.* at 398 (citing *United States v. Casas*, 425 F.3d 23, 38 (1st Cir. 2005)). However, these factors are not exhaustive; they merely guide the court's inquiry into whether the prosecutor's improper comments have undermined the fairness of the trial. *United States v. Carpenter*, 494 F.3d 13, 23 (1st Cir. 2007). Trial courts have "substantial deference" in considering these

factors, "reflecting the trial judge's familiarity with the case," *id*. at 24, and that the "trial judge has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors." *United States v. Glantz*, 810 F.2d 316, 320 n.2 (1st Cir. 1987) (quoting *Arizona v. Washington*, 434 U.S. 497, 514 (1978)).

Where a defendant fails to object to the government's summation, the court should "not notice error unless it caused 'a miscarriage of justice' or seriously undermined 'the integrity or public reputation of judicial proceedings.'" *Robinson*, 473 F.3d at 396-397 (quoting *United States v. Joslyn*, 99 F.3d 1182, 1198 (1st Cir. 1996)); *see also United States v. Taylor*, 54 F.3d 967, 977 (1st Cir. 1995) (referring to this standard as "hard-to-satisfy"). "In assaying the appropriateness of a prosecutor's remarks, context frequently determines meaning." *Id*. at 397 (quoting *United States v. Sepulveda*, 15 F.3d 1161, 1187 (1st Cir. 1993)).

### 2.   Analysis

#### a.   The Age and School Status of the Victim and the Relevance of the Defendant's Knowledge of her Age

In its preliminary and final jury instructions, the Court instructed the jury without objection by Mr. Deschambault—that one of the elements of the Government's burden of proof beyond a reasonable doubt was that the victim was a minor at the time Mr. Deschambault videotaped their sexual encounters:

> <u>First:</u> that an actual minor, that is, a real person who was less than 18 years old, was depicted;

*Trial Tr.* at 33:4-8; *Tr. Trans.* at 204:25-05:4.   In the final instructions, again without objection, the Court instructed the jury that the Government did not need prove that Mr. Deschambault knew the person depicted was a minor.  *Tr. Trans.* at 205:12-13.

During its opening and closing statements, the Government made occasional references to the victim's age and school status.  *See Trial Tr.* at 42-45; 208-213; 227-230.  Mr. Deschambault did not object to these references during trial.

On January 4, 2023, the parties filed their joint stipulations with the Court. *Stipulation* (ECF No. 204).   The stipulations were as follows: (1) "Government Exhibit 1 – an Apple iPhone bearing IMEI number 354957075834401 – came into the possession of law enforcement personnel on August 20, 2019" and (2) "Government Exhibit 1 belonged to Defendant Rayevon Deschambault."  *Id.* at 1. The stipulations included nothing about the victim's age or minor status.  At trial, the Government admitted into evidence the victim's birth certificate without objection.  *Trial Tr.* at 252:5-13.  Although Mr. Deschambault did not object to the admission of the victim's birth certificate, he did not state that the victim was a minor at the time of the alleged offense until his closing statement.[4]

Before the start of trial and at Mr. Deschambault's request, the Court heard Mr. Deschambault's argument that he be allowed to present evidence of his lack of knowledge of the victim's age.  *Trial Tr.* at 8:4-9:14.  The Court concluded that Mr.

---

[4]     In his closing argument, Mr. Deschambault stated: "She's a minor.  And nobody has argued in this case that she wasn't a minor." *Trial Tr.* at 214:16-17.  Mr. Deschambault's closing argument, however, is not evidence.   *Id.* at 202:17-20 ("[A]rguments and statements by lawyers are not evidence.   The lawyers are not witnesses.   What they say in their opening statements and closing arguments, and at other times is intended to help you interpret evidence, but it is not evidence").

Deschambault's knowledge of the victim's age was not relevant because under First Circuit precedent, "the Government does not have to prove the defendant knew the age of the victim." *Id.* at 10:4-5 (citing *United States v. Henry*, 827 F.3d 16 (1st Cir. 2016)).

Because the victim's age was not stipulated to at trial, the admission of the victim's birth certificate into evidence alone did not bar the Government from making reasonable references to the victim's actual age and school status, the Court concludes that the Government's references to the victim's age were not improper. By the time the victim testified at trial, she had turned eighteen and therefore when she testified, the victim was testifying as an adult. *Trial Tr.* 110:25-111:3. The Government was not required to prove the age element of the crime in only one way and could emphasize that she was not merely under eighteen, but was actually thirteen at the time of the video. "In a criminal case, the government is generally 'entitled to prove its case by evidence of its own choice.'" *United States v. Kinsella*, 944 F.3d 315, 335 (1st Cir. 2019) (quoting *Old Chief v. United States*, 519 U.S. 172, 186 (1997)). Thus, because the first element the Government was required to prove to make its case at trial was that "an actual minor, that is a real person who is less than eighteen years old, was depicted," the victim's age was an essential element of the offense on which the Government was entitled to make its case absent a stipulation. *Id.* at 205:3-4.

Moreover, the questions and comments about the victim, her age at the time of the sexual video, her schooling, and other personal information did not merely

run to her age at the time of the videotaping. The Government presented the victim for her recollection of the events in this case and her testimony, like all witnesses, was subject to the jury's assessment of her credibility. *See id.* at 201:20-202:6 (instructing the jury on witness credibility). The Government was not required to present the victim as a sterile witness but was entitled to elicit testimony about her background to assist the jury to make its credibility assessments. That Federal Rule of Evidence 412 restricted some evidence about the victim, *see Order on Mot. in Limine Regarding Fed. R. Evid. 412* (ECF No. 182), does not mean that all evidence of her background was off limits.

Although the Court ruled that Mr. Deschambault's knowledge of the victim's age was inadmissible under *Henry* because the defendant's knowledge of the victim's age is not an element of the offense—contrary to Mr. Deschambault's assertion—it did not rule that references to the victim's actual age and other personal information, rather than to Mr. Deschambault's knowledge of her age, were inadmissible. 827 F.3d 16. The Court thus concludes that the Government's periodic references to the victim's age and school status do not constitute a miscarriage of justice.

**b.    The Government's Other Remarks During Opening and Closing Statements**

In his motion, Mr. Deschambault points to the following remarks from the prosecutor in support of his request for a new trial: 1) the "girl" sits in a "dark and dirty room," 2) Mr. Deschambault asks her over and over again "whose pussy is this?", 3) the video lasted eight minutes, and "[t]hat's how long the defendant

30

receiving oral sex from a girl who had just finished the eighth grade", and 4) several references to her inability to consent. *Def.'s Mot.* at 8-10.

Although Mr. Deschambault contends that whether a minor may consent to being sexually exploited is "not a relevant element in the case, and a complicated calculation under [s]tate law as well, and not backed by any evidence whatsoever," the Court disagrees. *Id.* at 9. In its jury instructions, the Court instructed the jury that "[c]onsent is not a defense. A minor may not legally consent to being sexually exploited." *Trial Tr.* at 206:23-24. There is no suggestion that this was an inaccurate statement of the law or that the instruction should not have been given. In view of the nature of the videos, where there is no evidence of active coercion by Mr. Deschambault, the jury would naturally wonder whether her apparent consent was something they should consider in deliberating on the verdict, and the jury instruction anticipated this question and clarified the answer. The fact that the prosecutor commented on the application of a jury instruction to the evidence in this case is unremarkable.

Moreover, Mr. Deschambault presented evidence of the relationship between himself and the victim that could lead a jury to believe that the victim had consented to the sexual activity, when, legally, a minor cannot consent to the sexual activity with an adult or to being sexually exploited.[5] The introduction of such

---

[5]   Mr. Deschambault, through counsel, elicited the following testimony from the victim:

Q. And you started to feel close with each other before you even met, right, on the Snapchat?
A. Yeah.
Q. And [Mr. Deschambault] was always very respectful with you?
A. Very respectful.

31

evidence at trial further permitted the Government to comment on consent and generated the Court's instruction that consent is not a defense to a violation of 18 U.S.C. § 2251.

Mr. Deschambault's argument that the Government's use of the phrase "sexually exploited" is likewise unconvincing. Not only is the crime charged that of sexual exploitation of a child, but Mr. Deschambault himself used the term "sexual exploitation" numerous times throughout the trial. *See Trial Tr.* at 223 ("It's not the charge of a 23-year-old having sex with a 14-year-old. That's wrong and everybody knows it's wrong. That's not what this charge is. This is a whole different animal. It's creating child pornography, it's exploiting a minor for the purpose of making a video -- visual image"); *id.* at 225 (referring to the trial as a "major federal case of sexual exploitation of a child").

The Court finds similarly unpersuasive Mr. Deschambault's argument that the Government's reference to the victim sitting in a "dark and dirty room" was so prejudicial as to merit a new trial. First, whether or not the remark is accurate, the Court would be hard-pressed to find that a single use of this description constitutes the type of misconduct that could merit a new trial. But here, where the video that the Government described as taking place in a "dark and dirty room" was admitted

---

Q. And -- and then after you met you -- you developed a
romantic relationship, correct?
A. Yes, I did.
Q. And you had feelings for [him], right?
A. Yes, I did.
Q. And he told you he had feelings for you, right?
A. Yes.

*Trial Tr.* at 118:16-119:2.

into evidence and readily available to the jury, the Court concludes that the jury was able to make a determination as to the state of the room on its own and could appropriately find the room to be both dark and dirty, either dark or dirty, or neither dark nor dirty.  The Court thus concludes that neither the Government's use of the phrase "sexually exploited," its statement that a minor cannot consent to being sexually exploited, nor its reference to a "dark and dirty room" caused a miscarriage of justice here.

The prosecutor's references to "whose pussy is this?" is clearly fair game because it is consistent with Mr. Deschambault directing his victim in a manner consistent with video production as a motive for engaging in sex.  Moreover, the fact that the victim was fourteen years old at the time of the video suggests that, as a young teenager, she was more susceptible to direction and manipulation.

### D.    Prosecution Trial Strategy

On January 18, 2023, on the first day of trial, Mr. Deschambault moved to dismiss the case, arguing that the Government's dismissal just weeks before trial of Count Three for possession of child pornography amounted to unfair gamesmanship by the Government.  *Id.* at 14:9-15:11.  The Court denied Mr. Deschambault's motion.  *Id.* at 16:2-4.  Mr. Deschambault now submits that a new trial is warranted due to this same "gamesmanship" because the Government "dismissed [Count Three] on the day of jury selection" after having "justified a two year delay in bringing [count three] by claiming they would not need to bring the victim in to testify on [that count]."  *Def.'s Mot.* at 12.  He contends that this unfair strategy was

33

compounded when the Government "then in fact brought the victim in to testify, while moving the Court to exclude all evidence of [his] belief in the victim's age." *Id.*

The Court concludes that the Government's trial strategy does not constitute a miscarriage of justice because Count One and Count Two were included in the Indictment from the start of the case, providing Mr. Deschambault with ample time to prepare his defense of these counts, and there is no indication that the Government schemed to delay trial or jeopardize Mr. Deschambault's defense. The Court finds some legitimate justification for the Government's decision to dismiss Count Three before trial. As noted by the Government at the start of trial, its decision to dismiss Count Three was motivated in part by its concern of "the scope of cross-examination of the victim, and what was going to be allowed, and [the Government's] interest in protecting the victim's rights under the Crime Victim's Rights Act." *Trial Tr.* at 15:19-24. Moreover, after the Government charged Mr. Deschambault with Count Three, Mr. Deschambault filed a motion to dismiss count three for vindictive prosecution—an indication of his preference that he be charged only with Counts One and Count Two, which was ultimately the case at trial. Finally, it is unusual for a defendant to complain that the Government dismissed a charge in advance of trial, leaving the defense with fewer charges and less necessary preparation.

Although the Government's prosecution decisions delayed trial, there is no indication that the Government's initial decision to charge Mr. Deschambault with

Count Three or its later decision to dismiss Count Three were done maliciously, vindictively, or with the intent of delaying trial. The Court thus concludes that a new trial is not merited based on the Government's trial strategy and the resulting delay.

## V.    CONCLUSION

The Court DENIES Rayevon Deschambault's Motion for New Trial Pursuant to Federal Rule of Criminal Procedure 33(b)(2) (ECF No. 259).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of August, 2023